*273
 
 Allen, J.
 

 The relator, as Section 1295-31, General Code, (110 Ohio Laws, p. 22), provides, had been furnished with a copy of the complaint, had been given a hearing, and was entitled to state his case before the state board of optometry. He did not question the validity and authenticity of the affidavit either as to signature of the affidavit, as to attestation, or as to any other point. He declined to be sworn and to testify, to make any statement whatever, or to offer any other testimony in his behalf.
 

 Section 1295-31, General Code, (110 Ohio Laws, 22), reads as follows:
 

 “The board shall refuse to grant a certificate of licensure to any applicant and may cancel, revoke or suspend the operation of any certificate by it granted to any person guilty of fraud in passing the examination or at any time guilty of felony or gross immorality, grossly unprofessional or dishonest conduct, or addicted to the use of ardent spirit or stimulants, narcotics or any other substance which impairs the intellect and judgment to such an extent as to incapacitate one for the performance of the duties of an optometrist. The certificate of licensure of any person convicted of a violation of Section 1295-22 of the General Code shall be
 
 ipso facto
 
 revoked.
 

 “Any person who is the holder of a certificate of licensure or who is an applicant for examination for a certificate of licensure, against whom is preferred any charges, shall be furnished by the board with a copy of the complaint and shall have a hearing before the board, at which hearing he may be represented by counsel. At such hearing witnesses may be examined for and against the
 
 *274
 
 accused respecting the said charges, which examination shall be conducted in the manner usually followed in the taking of testimony before commissions in this state.”
 

 It is contended by relator that, if he was guilty of the offense charged in the affidavit, he was not guilty of grossly unprofessional conduct. No precise definition is given of this phrase in the statute, but Section 1295-29 provides that:
 

 “Peddling from door to door, or the establishment of temporary offices is specifically forbidden under penalty of revocation of said certificate by said board.”
 

 Hence the statute considers peddling from door to door to be equivalent to grossly unprofessional conduct.
 

 If the facts set out in the charge that the relator had employed solicitors to solicit and to make appointments for him to examine eyes were true, he was guilty of peddling from door to door through agents. For this he was liable to revocation of his license.
 

 The relator grounds his application for mandamus upon the proposition that he was not required, after receiving the written charges, to give any information to the optometry board, to make any statement, or to put in any testimony on his own behalf, until he had been confronted with witnesses against him upon the charge of unprofessional conduct.
 

 It is true, of course, that, if the relator had been charged with crime, he could not have been forced to answer the statements embodied in the affidavit in question; no testimony having been adduced in their support. However, the state board of optome
 
 *275
 
 try is an executive body, and is exercising an administrative power in revocation of the license. The mere fact that under the statute its decision as to revocation must be made after hearing does not render its function in revoking the license judicial. The hearing and determination are an incident to the executive power of revoking the license specifically conferred by the statute.
 
 State ex rel. Smith
 
 v.
 
 Barnett, Director of Public Service,
 
 109 Ohio St., 246, 142 N. E., 611.
 

 It would disrupt the entire administration of the executive department of the state, if in every instance where an executive officer exercises his judgment, makes a finding of fact, and decides upon the facts what ought to be done, we were to hold that the technical rules of the criminal law apply. As a matter of fact, the rules of judicial hearing do not govern in executive and administrative matters. Re
 
 etz
 
 v.
 
 Michigan,
 
 188 U. S., 505, 23 S. Ct., 390, 47 L. Ed., 563. In the
 
 Beets case
 
 the holding is much more drastic than our decision herein, for the statute there construed made no provision for notice or hearing, yet the Supreme Court of the United States held that the power of the state to refuse a certificate of registration, if it found that no sufficient proof was presented that the applicant had been “legally registered under Act No. 167 of 1883,” was not a judicial power. The court says (188 U. S., page 509, 23 S. Ct., 392):
 

 “He seems to assume that the proceedings before the board were in themselves of a criminal nature, and that the state by such proceedings was endeavoring to convict him of an offense in the practice of his profession. But this is a mistake.
 
 *276
 
 The state was simply seeking to ascertain who ought to be permitted to practice medicine or surgery, and criminality arises only when one assumes to practice without having his right, so to do established by the action of the board. The proceedings of the board to determine his qualifications are no more criminal than examinations of applicants to teach or practice law, and if the provisions for testing such qualifications ,are reasonable in their nature, a party must comply with them, and has no right to practice his profession in defiance thereof.”
 

 In
 
 People
 
 v.
 
 Hasbrouck,
 
 11 Utah, 291, 39 P., 918, the same question was presented. It was contended that the statute there construed was invalid in conferring judicial power upon a medical board. The court said (39 P., 921):
 

 “Many executive officers, even those who are spoken of as purely ministerial officers, act judicially in the determination of facts in the performance of their official duties; and in so doing they do not exercise ‘judicial power,’ as that phrase is commonly used, and as it is used in the organic act, in conferring judicial power upon specified courts. The powers conferred on the board of medical examiners are nowise different in character in this respect from those exercised by the examiners of candidates to teach in our public schools, or by tax assessors or boards of equalization in determining, for purposes of taxation, the value of property. The ascertainment and determination of qualifications to practice medicine by a board of competent experts, appointed for that purpose, is not the exercise of a power which appropriately
 
 *277
 
 belongs to the judicial department of the government.”
 

 Tbe fact that the function of the state optometry-board in making its decision as to revocation of the license is administrative and not judicial disposes of the contention raised by the board that mandamus will not lie herein because a remedy is provided for situations such as this in Section 12241 of the General Code. This statute authorizes a review in the court of common pleas of the proceedings of various inferior tribunals, officers, and boards. However, it permits a review in the court of common pleas of the acts of only those tribunals, boards, or officers which exercise judicial functions, and therefore does not here apply. Since, however, the relator was not entitled to be confronted by witnesses, as in a criminal case, before he made any statement in his own behalf, the board was justified in its finding. A clear, legal right to the extraordinary writ of mandamus has not been shown by the relator, and the demurrer will be sustained.
 

 Demurrer sustained.
 

 Marshall, C. J., Day, Kinkade and Robinson, JJ., concur.