PIERSTORFF, APPELLANT, *v.* BOARD OF EMBALMERS AND FUNERAL DIRECTORS, APPELLEE.

(No. 3768—Decided June 9, 1941.)

*Messrs. Reams, Bretherton & Neipp,* for appellant.
*Mr. Thomas J. Herbert,* attorney general, and *Mr. Richard A. Morris,* for appellee.

OVERMYER, J. In 1939 and 1940, complaints were filed with the Board of Embalmers and Funeral Directors of this state, charging Harry J. Pierstorff, a licensed funeral director but not a licensed embalmer, of Toledo, Ohio, with five several specifications of unprofessional conduct in his business or profession. On hearing, the board found the charges sustained as to three specifications and revoked the current annual funeral director's license of Pierstorff, the order being made on September 18, 1940.

From that order Pierstorff appealed to the Common Pleas Court and upon hearing the board was sustained and the order of the board was affirmed. From that

judgment of the Court of Common Pleas an appeal on questions of law was taken to this court.

The charges were filed under Section 1335-7, General Code, as amended effective May 2, 1938, which provides, in part, as follows:

"The board may refuse to grant, may suspend, or may revoke any license granted to a person for any of the following reasons: * * * (d) If the applicant therefor or holder thereof has been guilty of immoral or unprofessional conduct;" etc.

The specifications upon which the board found Pierstorff guilty of unprofessional conduct were designated as the Cramer, Eckerman and Rowland charges, and they may be briefly stated as follows:

In the Cramer complaint, it was charged that Pierstorff agreed to furnish a complete funeral, including a concrete vault, for the burial of Josephine Cramer, at a cost of $325, and later learning that the insurance on decedent's life amounted to $381.39, he raised his bill to equal the amount of the insurance, and, by dealing directly with the insurance company through decedent's relatives and under protest, collected and kept the full amount of insurance.

In the Eckerman charge, it was claimed that Mary Eckerman, seventy-two years of age, had on hand $345 in cash and no other property; that through other parties, appellant Pierstorff and she were brought together and she was induced and persuaded by him to give appellant $300 for a "pre-arranged funeral," with the promise and representation by appellant that he was in position to assist in securing Mary Eckerman an old age pension within a few months; that she did not and had not received such pension even at the time of hearing more than a year and a half later, and that she had nothing on which to live, demanded of appellant the return of her $300, and that he did return to her fifty dollars thereof and no more.

The Rowland complaint involved alleged non-payment by Pierstorff of certain moneys received by him and owing to a funeral director in Chattanooga, Tennessee, for cemetery charges for a burial there.

Two questions are presented by this case: 1. Does the board have power to revoke the license upon the grounds of unprofessional conduct? 2. If so, is its finding sustained by the evidence?

It is contended that the action of the board was arbitrary and an abuse of discretion because neither the statute nor any established or published rules or regulations of the board define or indicate what shall constitute "unprofessional conduct" warranting refusal of or revocation of a license, and that said term is not defined by the common law. It is urged that in the circumstances the appellant is being deprived of his property without due process of law.

A court, of course, will not substitute its judgment for that of an administrative board, in the absence of fraud, collusion or bad faith, and a board in exercising its power under the statutes is performing an administrative and not a judicial function. *State, ex rel. Mayers,* v. *Gray,* 114 Ohio St., 270, 151 N. E., 125; 32 Ohio Jurisprudence, 953, 954, Section 93.

A license, such as held by appellant, is not a property right; it is not a contract, and the Legislature may "impose new or additional burdens on the licensee," and reserves the right "to alter the license, or to revoke or annul it," even though the licensee has expended money in reliance thereon. *Sylvania Busses* v. *Toledo,* 118 Ohio St., 187, at 197, 160 N. E., 674, citing 17 Ruling Case Law, 476, and many cases.

The state has power to regulate a business, profession or occupation under its police power, in the interests of public health, morals or general welfare. 11 American Jurisprudence, 1044, Section 284; *Grown* v.

*Cleveland,* 125 Ohio St., 455, 181 N. E., 897; *West Coast Hotel Co.* v. *Parrish,* 300 U. S., 379, 81 L. Ed., 703, 57 S. Ct., 578.

Not only from the viewpoint of sanitation but from other considerations, there are few fields of business enterprise, profession or occupation into which the police power of the state may more appropriately extend its controlling and regulatory authority than that of the burial of the dead. From earliest times and among all peoples, this ceremony or rite has been attended with considerations of special dignity, decency and honor. Appellant is not here charged with "immoral" conduct, as that term is generally understood and used in legal parlance, but there are many of the finer "moral" requirements inherently associated with the professional conduct of any business or profession, and particularly in this field, which control the actions of a morally and intellectually honest man without suggestion from others and without printed rule. To define, by a set of rules and regulations, the manner in which these delicate requirements shall be met, would appear quite difficult of accomplishment, though it might be done. But these requirements are easily recognized when met, and their absence is glaring to the trained eye and mind and shocking to all the finer sensibilities of men.

Authorities are cited where it is held that in the absence of statutory or board definitions of the term "unprofessional conduct," one could have no standard by which to guage his conduct and that it is an arbitrary abuse of power to rest the authority to revoke a license within the discretion of an administrative board. The Ohio statutes on licensing and revocation of license of physicians and surgeons, midwives, osteopaths, optometrists and dentists, etc., are not uniform —in some cases the statute undertaking to set up standards and to define "grossly unprofessional" conduct; in others granting the appropriate board powers to

make rules and regulations, in others leaving the matter to the administrative discretion of the board. 31 Ohio Jurisprudence, 427 *et seq.*, Section 136 *et seq.*

The great weight of authority, and what we consider the better reasoned discussions bearing directly upon the question here involved, support the view that the statute involved in this case is not void and ineffective because it does not define the term "unprofessional conduct," nor is the board without power to revoke a license because it has not set up standards with reference to that term.

As typical of these authorities, we will cite *Prata Undertaking Co.* v. *State Board of Embalming and Funeral Directing,* 55 R. I., 454, 182 A., 808, 104 A. L. R., 389, a Rhode Island case under a statute similar to our own. The syllabus, as reported in A. L. R., reads in part as follows:

"A provision of a state statute having for its general purpose the regulation of the undertaking business, which gives a state board of embalming power to revoke or suspend certificates of registration, required of those engaging in the business, for gross incompetency, unprofessional conduct, or 'other cause deemed sufficient in the judgment of said board,' does not confer unreasonable and arbitrary power on the board in violation of rights secured by the Fourteenth Amendment to the federal Constitution, especially where provision is made for an appeal to the courts from any ruling of the board suspending or revoking a certificate."

See, also, *State, ex rel. McAnally,* v. *Goodier,* 195 Mo., 551, 93 S. W., 928; *Miller* v. *Johnson,* 110 Kan., 135, 202 P., 619; *State, ex rel. Nowotny,* v. *City of Milwaukee,* 140 Wis., 38, 121 N. W., 658; *People* v. *McCoy,* 125 Ill., 289, 17 N. E., 786; *Seitz* v. *Medical Board,* 24 Ohio App., 154, 157 N. E., 304; *Lehmann* v. *Board of Accountancy,* 208 Ala., 185, 94 So., 94; *Spurgeon* v. *Rhodes,* 167 Ind., 1, 78 N. E., 228.

"Applied to a physician, 'unprofessional' has been held to be convertible or synonymous with 'dishonorable.' * * * Unprofessional conduct—That which violates the rules or ethical code of a profession or such conduct which is unbecoming a member of a profession in good standing." 66 Corpus Juris, 55, citing many cases.

"The subject-matter of statutes prescribing such grounds [any infamous, disgraceful or improper conduct in a professional respect] is within the police power, and, except in a few instances, the statutes are held not to be void for uncertainty or indefiniteness." 48 Corpus Juris, 1099, Section 72 (hh).

In the statute under consideration, the Legislature has declared that a license may be revoked by the board which granted it, for "immoral or unprofessional conduct." The power thus vested in a board goes not only to the qualifications of the licensee but the protection of the public with whom he deals. When his conduct in his business or profession is such that by the common standards of professional conduct and fair dealing he has brought himself within the inhibitions of the law, he can not well claim in defense that he did not know in advance that his conduct was unprofessional, and especially when he has had, after due notice, a full hearing before the board which licensed him, and is given by law an appeal to the courts of his state.

We have read all the evidence offered before the board, which was the evidence submitted in Common Pleas Court, and considering the same and appellant's explanations given as to the several complaints, our conclusion is that the finding of the board is not against the weight of the evidence. The judgment will be affirmed.

*Judgment affirmed.*

LLOYD and CARPENTER, JJ., concur.