290 P.2d 1077

**C. R. HATFIELD and L. W. Hitchcock,**
**Petitioners-Appellees,**

v.

**NEW MEXICO STATE BOARD OF REGIS-**
**TRATION FOR PROFESSIONAL ENGI-**
**NEERS AND LAND SURVEYORS, Re-**
**spondent-Appellant.**

No. 5875.

Supreme Court of New Mexico.

July 29, 1955.

Rehearing Denied Sept. 13, 1955 and
Jan. 3, 1956.

Richard H. Robinson, Atty. Gen., Fred M. Standley, Asst. Atty. Gen., Charles D. Harris, Spec. Asst. Atty. Gen., for appellant.

Wilson & Whitehouse, Albuquerque, for appellees.

SADLER, Justice.

The question for decision is whether L. 1935, c. 45, § 23, 1953 Comp. § 67–21–21, purporting to confer power on the State Board of Registration for Professional Engineers and Land Surveyors to revoke the certificate of registration of any registrant who is found guilty by the board after trial before it of gross negligence, incompetency, or misconduct in the practice of professional engineering or land surveying, is unconstitutional as an unlawful attempt to delegate legislative powers to an administrative board.

The appeal is from a judgment of the district court of the first judicial district, the Honorable David W. Carmody, presiding, sitting within and for Santa Fe County wherein, after hearing on a writ of certiorari to the New Mexico State Board of Registration for Professional Engineers and Land Surveyors, he entered a judgment annuling and holding for naught the order of the respondent board (appellant here) canceling the licenses of appellees (petitioners below) as professional engineers and ordering the appellant board to reinstate their licenses, so cancelled.

So much of the order of the State Board, omitting the specific findings, as it is presently important to recite reads, as follows:

"This case coming on to be heard upon the sworn complaints of Don Johnstone and William Mooney and L. W. Hitchcock and C. R. Hatfield being represented by Mr. Fred Wilson and Mr. J. G. Whitehouse and the Board being represented by Mr. Richard Robinson, Attorney-General, and Mr. Charles D. Harris, Special Assistant Attorney-General, and the Board having considered the motions, complaints and having heard the evidence, finds:

"I. That the complaints heretofore filed with this Board by Don Johnstone and William Mooney are not trivial and are not unfounded.

*      *      *      *      *      *

"XVI. That the actions of L. W. Hitchcock and C. R. Hatfield, and each

of them, as set out in the complaints heretofore filed, constitute misconduct in the practice of professional engineering within the meaning and under the provisions of Chapter 130, Laws of 1933, being Section 1[51]–2421, New Mexico Statutes 1941, Annotated.

"XVII. That the actions of L. W. Hitchcock and C. R. Hatfield, and each of them as set out in the complaints heretofore filed, constitute incompetency in the practice of professional engineering within the meaning and under the provisions of Chapter 130, Laws of 1933, being Section 51–2421, New Mexico Statutes 1941, Annotated.

"XVIII. That the actions of L. W. Hitchcock and C. R. Hatfield, and each of them, as set out in the complaints heretofore filed, constitute gross negligence in the practice of professional engineering within the meaning and under the provisions of Chapter 130, Laws of 1933, being Section 51–2421, New Mexico Statutes 1941, Annotated.

"Wherefore, It Is Ordered, Adjudged and Decreed that the certificate of registration of C. R. Hatfield for the practice of the profession of engineering be, and the same hereby is, revoked.

"It Is Further Ordered, Adjudged and Decreed that the certificate of registration of L. W. Hitchcock for the practice of the profession of engineering be, and the same hereby is, revoked."

Thereafter and in due course the matter came on for hearing before the district court, all parties appearing by counsel and the hearing having been concluded, the court entered the judgment now complained of, holding the challenged portion of L.1935, c. 45, § 23, 1953 Comp. § 67–21–21, to be an unlawful delegation of legislative power to the governing board of Professional Engineers and Land Surveyors, contrary to the prohibition to be found in Const., Art. 3, § 1. Accordingly, the court in the decretal portion of its judgment vacated the action of appellant's governing board in the following language, to-wit:

"It Is, Therefore, Ordered, Adjudged, and Decreed by the Court that said statute is unconstitutional, and the proceedings of said Respondent Board, based upon such statute, were without authority or jurisdiction and are void and of no force or effect; and that the Motion of Respondent Board to quash said Writ be and the same is hereby overruled.

"It Is Further Ordered That the Findings of Fact and Order revoking the licenses of said Petitioners as professional engineers is hereby annuled, and Respondent is ordered to reinstate the licenses of said Petitioners."

This appeal followed and on it the main and only error assigned by respondent

board is that the trial court erred in ruling that L.1935, c. 45, § 23, 1953 Comp. § 67–21–21, represents an unlawful delegation of legislative power to the governing board of respondent. This claim of error is argued under a single point, reading as follows:

"The delegation to an administrative board of the power to issue licenses and revoke licenses of professional engineers is a constitutional delegation of legislative authority.

"A. The laws of 1935, Chapter 45, being section 51–2404 N.M.S.A.1941 Compilation, creates a sufficient definite legislative standard to guide the action of the New Mexico State Board of Registration for Professional Engineers and Land Surveyors in revoking the licenses of registered professional engineers."

Counsel for appellant begin their argument with the statement that the order as made is susceptible of an interpretation that *any* attempted delegation by the legislature of the power to license and revoke would fall under interdiction of the constitutional provision invoked. They quickly dispel the suggested interpretation, however, and wisely so, by an assumption that appellees' objection to the challenged statute is the claimed absence of a definite standard to guide the board in revoking licenses. The governing board of appellant was created by L.1935, c. 45, § 4, its personnel to be named by the Governor and various and sundry powers were conferred upon the board, among others, the power to license and regulate the business in which members of the profession regulated were members. Incident to regulation of the profession the board was authorized, after charges and a hearing before it, to revoke the license, or certificate of registration as it is called in the statute, of any registrant found guilty of specified acts. So far as material the pertinent section of the statute, Comp. Laws, 1953, § 67–21–21, L.1935, c. 45, § 23, reads:

"The board shall have the power to revoke the certificate of registration of any registrant who is found guilty. of:

"(a)—The practice of any fraud or deceit in obtaining a certificate of registration;

"(b)—Any gross negligence, incompetency, or misconduct in the practice of professional engineering or land surveying as a registered professional engineer or land surveyor.

"Any person may prefer charges of fraud, deceit, gross negligence, incompetency, or misconduct against any registrant. Such charges shall be in writing, and shall be sworn to by the person making them and shall be filed with the secretary of the board."

Since there was no charge against appellees that they, or either of them, had been

guilty of any fraud or deceit in obtaining the certificate of registration held by each, the basis of revocation is confined to the grounds listed in 1953 Comp. § 67–21–21 (b), namely, "gross negligence, incompetency, or misconduct." We may safely assume these words were employed by the legislature in the sense in which they are commonly understood. Then, what is the generally understood meaning of these words and phrases?

Webster defines negligence as failure to exercise the care that the circumstances justly demand; omission of duty of doing or forbearing. Webster defines gross as plain, manifest, obvious, flagrant, shameful. 1 Bouv. Law Dict., Rawles Third Revision p. 1383 defines gross negligence as:

"The omission of that care with which even the inattentive and thoughtless never fail to take care of their own property. Jones, Bailm.; Neal v. Gillette, 23 Conn. 437; 3 Hurlst. and C. 337.

"Such as evidences wilfulness; such a gross want of care and regard for the right of others as to justify the presumption of wilfulness and wantonness, 2 Thomp.Neg. 1264, Sec. 52; such as implies a disregard of consequences or a willingness to inflict injury. Deering, Neg., Sec. 29; Lake Shore & M. S. Ry. Co. v. Bodemer, 139 Ill. 596, 29 N.E. 692."

Incompetence is defined in Webster as being the quality, state or fact of being incompetent; inadequate; specific lack of legal qualification or fitness. 1 Bouv. Law Dict., Rawles Third Revision p. 1528 defines incompetency as being the lack of ability or fitness to discharge the required duty.

Webster defines misconduct as to conduct amiss; to mismanage; wrong or improper conduct. 27 Words and Phrases, p. 309, in defining misconduct states:

" 'Misconduct' is wrong or improper conduct; bad behavior; unlawful behavior or conduct; malfeasance. Sanford v. Grady, 1 Cal.App.2d 365, 36 P. 2d 652; Surgan v. Parker, La.App., 181 So. 86, 89. * * * 'Misconduct' is defined as 'wrong conduct; bad behavior; mismanagement.' The synonyms are 'misbehavior; misdemeanor; mismanagement; misdeed; delinquency; offense.' The verb 'misconduct' is defined: 'to conduct amiss; to mismanage.' Bailey v. Examining and Trial Board of Police Department, City of Helena, 45 Mont. 197, 121 P. 572, 574."

In resolving the question before us, we should not overlook the fact that the licensing act assailed is only one of some 30 or more kindred acts regulating the licensing and conduct, as well as the revocation of licenses of the various businesses, occupations and professions in the state. Many

of them have set forth as grounds for the revocation of licenses, exactly the same ones or their equivalent of those found in the act regulating professional engineering. Chapter 67 of 1953 Compilation, beginning with section 67-1-1 and continuing through section 67-24-18 is the Chapter of our Statutes which provides for the regulation and licensing of business and professional pursuits other than attorneys at law. The first article relates to the basic sciences of the healing arts and the last to real estate dealers.

One has only to run through these various enactments to ascertain the common pattern recognizable in practically every one as the basis for revocation of a license. Some are in greater detail than others in enumerating grounds of revocation, to be sure, as for instance, 1953 Comp. § 67-4-10, dealing with dentistry. But we need look only at 1953 Comp. § 67-5-9, setting up as grounds for revoking the license of physicians and surgeons, namely, that the registrant has been found guilty of "immoral, dishonorable or unprofessional" conduct to be convinced that these grounds are as broad, if not even broader than those with which we are here concerned. See, also, § 67-12-3, relating to architects, exactly the same as for professional engineers; § 67-23-17, relating to certified public accountants; § 67-17-17, relating to cosmetology and so on through the list of regulated trades, businesses and professions. In certain instances the sole grounds of revocation are the same as for the engineers, or in others the same grounds, or their equivalent, are to be found along with others enumerated which themselves ordinarily would fall in the same category as the broader grounds present, in any event.

The New Mexico case with the most direct bearing on the question before us, though not a case to revoke a license, is that of State v. Spears, 57 N.M. 400, 259 P.2d 356, 360, 39 A.L.R.2d 595. The action arose in a criminal prosecution of the defendant for failure to secure a license before engaging in the business of real estate broker. His counsel moved to quash the information against him and the motion having been overruled by the district court, he came before us on the claim that the statute under which he was being prosecuted constituted an unlawful delegation of legislative power to an administrative board. Among other things, in denying the challenge made to the law, we said:

" * * * The law here in question provides for the appointment of a board, made up of persons experienced in the real estate business, to which the duties imposed are intrusted for performance, and to which is committed the power to make and enforce any and all rules and regulations to carry out the provisions of the act and of prescribing such reasonable written examinations of

such scope as to determine the qualifications of applicants, and it must be presumed that the board will exercise fairly and impartially the powers conferred."

We quoted approvingly from 11 Am.Jur. 923, § 214, as follows:

" 'In order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. There are many powers so far legislative that they may properly be exercised by the legislature, but which may nevertheless be delegated, since the legislature may delegate any technically nonlegislative power which it may itself lawfully exercise. While it cannot abdicate its general law-making powers, it may authorize others to do things which it might properly do, but which it cannot conveniently or advantageously perform. * * * ' "

It is to be noted that in the foregoing case, the statute involved set up no standards on what the examination should cover and no qualifications for applicants for a license other than that he should be of "good moral character, honest and trustworthy." Yet, we declined to sustain the contention that the act was bad because too vague or indefinite in this particular, or amounted to an unlawful delegation of legislative power to an administrative board. There is no distinction in principle between that case and this one.

Other New Mexico decisions which we think directly or arguendo support the contention that there is here no unlawful delegation of legislative power are Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779, and State v. McKinley, 53 N.M. 106, 202 P.2d 964. In the Arnold case, we said [45 N.M. 57, 109 P.2d 786]:

"We had a like question before us in Yeo v. Tweedy, 34 N.M. 611, 286 P. 970. That was a case involving the administration of underground streams, and it was unsuccessfully urged that there was an unlawful delegation of legislative power to ten per cent of the water users of the area, in that the act left it optional with such ten per cent of the water users to determine whether any particular underground stream should be governed thereby. We held there was no unlawful delegation of such power, and pointed to the fact that the determination of the question of whether any particular stream shall come under the jurisdiction of the state engineer is not made by ten per cent of the water users, but by the state engineer in whom the ultimate authority was properly reposed by the legisla-

ture. In making his findings that such underground bodies as have boundaries reasonably ascertained by scientific investigations or by surface indications, we said, he is carrying out and exercising an authority which the legislature properly determines he might have. Likewise, the power of ultimately fixing the minimum price to be charged for barber services is, by the legislature, properly lodged in the hands of the Board with authority to 'vary or refix' from time to time the minimum price.

"It will not be disputed that the declaration of the legislature as to the purposes to be achieved, and its finding as to the relation of the public health to the matter upon which the legislature acts, is entitled to great weight, though such declarations, of course, are not conclusive upon the courts. * * *

"The courts have recognized a wide latitude in the legislature to determine the necessity for protecting the peace, health, safety, morals, and general welfare of the people."

The language found in the Arnold case touching the measure being construed as one promoting the public health and safety is directly pertinent to provisions in the legislation here questioned. The very first section of the act reads:

"In order to safeguard life, health, and property, any person practicing or offering to practice the professions of engineering or land surveying, shall hereafter be required to submit evidence that he is qualified so to practice and shall be registered as hereinafter provided; and it shall be unlawful for any person to practice or to offer to practice the professions of engineering or land surveying, in this state, or to use in connection with his name or otherwise assume, use or advertise any title or description tending to convey the impression that he is a professional engineer or land surveyor, unless such person has been duly registered or exempted under the provisions of this act." 1953 Comp. § 67–21–1.

State v. McKinley, supra [53 N.M. 106, 202 P.2d 966] is peculiarly significant in the light of certain argument by counsel for defendant in the case at bar. They argue that without an enumeration of particular acts which constitute "gross negligence, incompetency, or misconduct", sufficient to authorize revocation of license, the governing board is invested with unbridled discretion to do so on any fancied ground, however absurd or trivial, if it chances to meet the fancy of the board members.

When the same argument was aimed at the Juvenile Delinquency Act defining the

crime of contributing to juvenile delinquency as the commission of any act or the omission to perform any duty "which * * * tends to cause or encourage the delinquency of any person under the age of eighteen (18) years of age", we rejected the argument, and said:

"The first challenge to the statute's validity is that it is so vague, indefinite and uncertain as to be incapable of interpretation and enforcement. With this contention, we do not agree.

*      *      *      *      *      *

"The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency. State v. Harris, supra [105 W.Va. 165, 141 S.E. 637]. As quoted approvingly in the Chenault case [State v. Chenault, 20 N.M. 181, 147 P. 283], from the Supreme Court of Vermont in State v. Millard, 18 Vt. 574, 577, 46 Am.Dec. 170, 'the indelicacy of the subject forbids it. * * * The common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it.' "

Many cases from other jurisdictions sustain similar language in acts regulating engineering and other professions against charges similar to that here made against ours, namely, that it represents an unlawful delegation of legislative power to an administrative board. See Kuehnel v. Wisconsin Registration Board of Architects and Professional Engineers, 243 Wis. 188, 9 N.W.2d 630; Garman v. Myers, 183 Okl. 141, 80 P.2d 624; Klafter v. State Board of Examiners of Architects, 259 Ill. 15, 102 N.E. 193, 46 L.R.A.,N.S., 532; State Board of Medical Registration and Examination v. Scherer, 221 Ind. 92, 46 N.E.2d 602; Pierstorff v. Board of Embalmers and Funeral Directors, 68 Ohio App. 453, 41 N.E.2d 889; Prettyman, Inc., v. Florida Real Estate Commission, 92 Fla. 515, 109 So. 442; In Re Revocation of Certificate of Registration of Scott, 46 Dauph., Pa., 196, 203; M.M.M., Inc. v. Mitchell, Tex., 265 S.W.2d 584.

In Klafter v. State Board of Examiners of Architects [259 Ill. 15, 102 N.E. 195], supra, the Supreme Court of Illinois was dealing with a statute containing language much like that found in our act, here questioned. As to its sufficiency, the court said:

"The further argument is made that the statute is void for uncertainty, in

that it does not define what is meant by 'gross incompetency or recklessness in the construction of buildings,' the portion of the statute on which the charge against appellant was founded. It is most earnestly insisted that such a charge is so uncertain as to be void, as it does not advise him so that he can prepare for his defense. This argument finds support in certain decisions of the California and Kentucky courts. The weight of authority, however, in other jurisdictions is in favor of the validity of statutes with wording similar to the one here in question. See review of authorities in note to Hewitt v. State Board, [148 Cal. 590, 84 P. 39, 3 L.R.A.,N.S., 896] 7 Ann.Cas. 750. The argument on this point seems to be based partially on the ground that the Legislature cannot delegate power to the state board of examiners of architects. We do not think the power to legislate is conferred by this act upon that board.

\* \* \* \* \* \*

"In Block v. City of Chicago, 239 Ill. 251, page 263, 87 N.E. 1011, page 1015 (130 Am.St.Rep. 219), it was argued that an ordinance which provided that the chief of police could prohibit the exhibition of any obscene or immoral picture fixed no standard by which the chief of police could act. The court said: 'Manifestly it would be impossible to specify in an ordinance every picture or particular variety of picture which would be considered immoral or obscene, and no definition could be formulated which would afford a better standard than the words of the ordinance.' The same reasoning applies to the words 'gross incompetency or recklessness in the construction of buildings.' These words clearly imply that the license shall not be revoked for trivial causes. What actions or conduct of an architect will bring him within the meaning of these words must be left to the sound discretion of the state board. It must be some act or conduct that in the common judgment would be considered grossly incompetent or reckless. It is a practical impossibility to set out in a statute, in detail, every act which would justify the revocation of a license. The requirements of the statute can only be stated in general terms and a reasonable discretion reposed in the officials charged with its enforcement. The statute in question is not void for uncertainty."

In the case of Pierstorff v. Board of Embalmers and Funeral Directors, supra [68 Ohio App. 453, 41 N.E.2d 890], the Ohio appellate court had before it an act giving the governing board power to refuse to grant, to suspend or to revoke any license "if the applicant therefor or holder has (had) been guilty of immoral or unprofes-

sional conduct," etc. In upholding the act against the attack made on it, the court said:

"Two questions are presented by this case: 1. Does the board have power to revoke the license upon the grounds of unprofessional conduct? 2. If so, is its finding sustained by the evidence?

"It is contended that the action of the board was arbitrary and an abuse of discretion because neither the statute nor any established or published rules or regulations of the board define or indicate what shall constitute 'unprofessional conduct' warranting refusal of or revocation of a license, and that said term is not defined by the common law. It is urged that in the circumstances the appellant is being deprived of his property without due process of law.

\*   \*   \*   \*   \*   \*

"The great weight of authority, and what we consider the better reasoned discussions bearing directly upon the question here involved, support the view that the statute involved in this case is not void and ineffective because it does not define the term 'unprofessional conduct,' nor is the board without power to revoke a license because it has not set up standards with reference to that term."

In Prettyman, Inc. v. Florida Real Estate Commission, supra [92 Fla. 515, 109 So. 445], the court was dealing with the revocation of a real estate broker's license. The act was challenged as an unlawful delegation of legislative power to a county judge. In sustaining the act, the court said:

"The proceedings for revoking registration certificates and occupational licenses in section 9 of chapter 11336 are not exclusively judicial in their nature; they differ materially from the criminal procedure contemplated by section 12 of the act, and are not forbidden by section 17, art. 5, or any other provision of organic law.

"The county judge is authorized by the Constitution to issue licenses, and officers who issue licenses may be authorized to revoke them. 37 C.J. 247.

"As the quasi judicial power conferred upon the county judges by section 9 of chapter 11336, Laws of Florida, is not forbidden by the Constitution and does not affect the constitutional jurisdiction of any other court, and as such quasi judicial function comports with powers expressly conferred upon county judges by section 17, art. 5, of the Constitution, such section 9, c. 11336, does not violate the last-named section of the Constitution, but is a reasonable exercise of legislative power in conferring quasi judi-

cial power upon county judges in the enforcement of salutary police regulations affecting the public welfare."

It is interesting to note that in Florida where the Prettyman case was decided, there is a law for the registration of professional engineers in which one of the grounds for revocation of licenses is substantially the same as ours. If found guilty by the governing board of "malpractice, malfeasance, gross negligence or incompetency in the practice of professional engineering", the license may be revoked. Fla.St.1953, § 471.26 F.S.A.

A recent text on Professional Engineering Registration Laws (1954) by McCawley, at page 585 states:

"In the United States, exclusive of the District of Columbia and the organized territories, there are thirty-eight legally recognized and regulated professions. There are more than 1100 registrational laws, ranging from eighteen in Mississippi to twenty-eight in Arizona, and twenty-eight in Utah.

"These laws are administered by licensing boards having collectively some 7500 members. Thirteen of these professions, including professional engineers, are licensed in all forty-eight states.

"These licensing laws are, without exception, based upon what is known as the police power, inherent in state legislatures; that is, the power to enact any law deemed necessary for the protection of the property, peace, life, health and safety of the inhabitants of the state."

In a roll call of some 40 states and territories to be found in the work by McCawley, it is disclosed that several of the acts regulating professional engineers include the same ground for revocation as exists in New Mexico. In none of them is any effort made to define "gross negligence, misconduct or incompetency."

The two cases most relied upon by counsel for the defendant are Prouty v. Heron, 127 Colo. 168, 255 P.2d 755, and Krebs v. Thompson, 387 Ill. 471, 56 N.E.2d 761. Neither is controlling here, if both were deemed in point, as we think neither is when viewed in the light of questions raised and decided. Viewed from this standpoint the earlier Illinois case of Klafter v. State Board of Examiners of Architects, supra, from which we have quoted above, is much more like the one at bar. It is certainly not overruled by the Krebs case; indeed, it is not even cited. But, as stated, if both cases so much relied upon by defendant should be deemed in point and against the conclusions we reach, they would represent a small minority of decisions so holding.

The plaintiffs (appellees) have sought to raise several questions before us, other than the one error assigned by defendants (ap-

pellants), namely, that the court erred in holding the questioned statute amounts to an unlawful delegation of legislative power to an administrative board, contrary to the prohibition found in Const. Art. 3, § 1. First, they would have us consider whether the same article of the constitution is violated as making an unlawful delegation of judicial power to an administrative board; and, likewise, whether the statute does not violate the due process clauses of the state and federal constitutions.

■ There are several reasons why we can not pass upon questions not raised below. In the first place, the fact that they were not presented to and ruled upon by the trial court denies a party the right to present the questions here. In the second place, if they had been raised below and ruled against the plaintiffs, they have not sought to preserve the error, if any, as errors committed against them which, correctly decided, would support the trial court's action. So it is, the trial court's ruling that the challenged statute was an unlawful delegation of legislative power to an administrative board in violation of Const. Art. 3, § 1, is the only one before us for decision.

More than once the plaintiffs (appellees) complain they were not allowed to present evidence in their defense against the charges brought against them. The fact is, and it fairly appears from the record before us, that orders to show cause with copies of the charges against them were served on each plaintiff, noticing the matter for hearing before the board at a time and place described in the notice; that pursuant to such notice both of them appeared accompanied by their counsel and proof supporting the charges was adduced. They were given every opportunity to put on evidence. Instead of doing so, they chose to move for a continuance to some future date to produce evidence in their defense. This motion, the board denied. They then protested against the holding of any hearing, upon the ground that the board lacked jurisdiction to proceed for various legal reasons presented to the board. The fact that plaintiffs saw fit to produce no evidence may not fairly be charged to any action of defendants. They offered plaintiffs the opportunity to do so and the latter declined to avail themselves of it.

■ It is our considered judgment that the questioned language in the statute is not an unlawful delegation of legislative power to the governing board of the defendants and we so hold. The trial court erred in ruling otherwise.

It follows from what has been said the judgment reviewed is erroneous and must be reversed. The cause will be remanded to the district court with a direction to set aside its judgment and enter a new one affirming the action taken by the governing

board of the defendants, revoking the licenses of the plaintiffs.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.