367 P.2d 925

STATE of New Mexico ex rel. Jack E. HOLMES, Chief Tax Commissioner, State Tax Commission of New Mexico, Relator,

v.

STATE BOARD OF FINANCE of the State of New Mexico, Respondent.

No. 7033.

Supreme Court of New Mexico.

Dec. 19, 1961.

---

Earl E. Hartley, Atty. Gen., Boston E. Witt and Oliver E. Payne, Asst. Attys. Gen., for relator.

Modrall, Seymour, Sperling, Roehl & Harris, Daniel A. Sisk, Albuquerque, for respondent.

MOISE, Justice.

On the petition of Relator, this court, in the exercise of its original jurisdiction issued its alternative writ of prohibition commanding Respondent to refrain from cutting or reducing the 1961–1962 budget of the State Tax Commission, and directing Respondent to show cause on a date certain why a peremptory writ of prohibition should not issue as prayed in the petition.

In the petition Relator alleges that in the 1961 general Appropriation Act (Chap. 254, N.M.S.L. 1961) the legislature appropriated to the State Tax Commission for unit assessment a total of $66,000 for the 1961–62 fiscal year; that a budget was duly submitted to and approved by the budget division of the department of finance and administration as required by § 11–4–1.8, N.M.S.A.1953 (pocket supp.); that respondent proposes to, and unless prohibited, will reduce the annual operating budget for unit assessment in an amount not to exceed 10%, relying for authority to do so on the provisions of § 24, Chap. 254, N.M.S.L.1961, which reads as follows:

"The state board of finance is hereby authorized to reduce all annual operating budgets authorized herein not to exceed ten percent, except interest and principal payments on debts and salaries of elected state officials."

and that said provision insofar as it relates to the power of the Respondent to reduce annual operating budgets is an unlawful and unconstitutional delegation of legislative powers to the executive branch of government.

By its answer, Respondent has admitted all material allegations except that it denies that there is any unconstitutional delegation of legislative powers to the executive branch contained in § 24, Chap. 254, N.M.S.L.1961, and states affirmatively that by § 11–1–1, N.M.S.A.1953, pocket supp., and other statutes it is charged with general supervision of fiscal affairs of the state; that actual collections of revenue for the fiscal year are falling below anticipated revenues upon which the appropriation in

the general appropriation act were based; that Respondent being cognizant of these deficiencies proposed to make the reductions complained of, and that such action is the result of careful and deliberate consideration in the exercise of its powers under § 24, Chap. 254, N.M.S.L.1961; that the efficient operation of the State Tax Commission will not be materially affected by the reduction; that since 1935 Respondent, on numerous occasions and under similar authority, has made percentage reductions of the expenditure of appropriated funds, and that such action has been acquiesced in and sanctioned by the legislature.

Under his first point Relator argues that § 24, Chap. 254, N.M.S.L.1961, already set out in full above, is unconstitutional because it purports to delegate legislative powers to reduce appropriations to the executive, and that such powers are nondelegable and the attempted delegation violative of Art. IV, § 22, and Art. III, § 1, of the New Mexico Constitution.

Art. IV, § 22, insofar as material to the argument, reads as follows:

"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor for approval. If he approves, he shall sign it, and deposit with the secretary of state; otherwise, he shall return it to the house in which it originated, with his objections, which shall be entered at large upon the journal; and such bill shall not become a law unless thereafter approved by two-thirds of the members present and voting in each house by yea and nay vote entered upon its journal. * * * The governor may in like manner approve or disapprove any part or parts, item or items, of any bill appropriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided."

Art. III, § 1, is quoted as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this Constitution otherwise expressly directed or permitted."

In our opinion, in the case of State ex rel. Lee v. Hartman, No. 7034, 69 N.M. 419, 367 P.2d 918, we have set forth a brief summary of the fiscal and budgetary controls authorized by our legislature over the years. In the interest of space we will not repeat the same here. However, we do refer to it, and particularly to that:

part setting forth the history of provisions similar to § 24, here under attack.

Whereas, in State ex rel. Lee v. Hartman, supra, constitutionality of the grant of the power claimed was not determined because an examination of the legislation convinced us that the legislature never granted or intended to grant it, our problem here is different inasmuch as the language of § 24 clearly and unequivocally purports to invest the Respondent with the authority which it proposes to exercise. Accordingly, unless it contravenes constitutional prohibitions the alternative writ should be discharged.

We approach our task with the following rule quoted from State v. Armstrong, 31 N.M. 220, 255, 243 P. 333, 347, uppermost in our minds:

"The Legislature is a co-ordinate branch of our state government. Its prerogative in the matter of legislation is to be questioned solely from the standpoint of our federal or state constitutional limitations. The function of the courts in scrutinizing acts of the Legislature is not to raise possible doubt nor to listen to captious criticism. The Legislature possessing the sole power of enacting law, it will not be presumed that the people have intended to limit its power or practice by unreasonable or arbitrary restrictions. Every presumption is ordinarily to be indulged in favor of the validity and regularity of legislative acts and procedure."

There can be no question that the power over appropriations is a legislative power (Art. IV, § 30, N.M.Const.) and that Art. III, § 1, quoted above, would deny the right of the executive to exercise the same except as "expressly directed or permitted" in the constitution. Gamble v. Velarde, 36 N.M. 262, 13 P.2d 559. One example of the power of the executive over appropriations expressly granted is the veto power provided in Art. IV, § 22. This was recognized by us in State ex rel. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205. Also in that case we clearly acknowledged and stated that "our Constitution does not, necessarily, foreclose the exercise by one department of the state of powers of another but contemplates in unmistakable language that there are certain instances where the overlapping of power exists."

Relator's argument proceeds on a theory that § 24 attempts to grant to Respondent the power to scale down appropriations or to partially veto them any time during the year in which they are effective, and that this would violate the constitutional provision granting the veto power to the governor, and specifying the manner and the time when it may be exercised (Art. IV, § 22). Principal reliance is placed upon the cases of State ex rel. Crable v.

Carter, 187 Okl. 421, 103 P.2d 518, and State ex rel. Hudson v. Carter, 167 Okl. 32, 27 P.2d 617, 91 A.L.R. 1497. We are impressed that the result reached by the Oklahoma court cannot be reconciled with the reasoning of this court in State ex rel. Lucero v. Marron, post, and cases from numerous other jurisdictions cited post. The other cases cited by Relator and relied on by him are in our opinion clearly distinguishable on their facts. Admittedly, it is generally held that the governor has no power to scale down an item in an appropriation act. 35 A.L.R. 600, 606. This was recognized by us in State ex rel. Dickson v. Saiz, supra.

On the other hand, respondent calls our attention to numerous cases clearly holding that whereas only the legislature can make appropriations, and the veto power can only be exercised as provided in the constitution, a distinction is recognized between appropriations and expenditures and there is no inhibition in the constitution to the inclusion within the general appropriation law of provisions governing how the amounts appropriated are to be expended. As a matter of fact, this court at an early date considered the problem and ruled thereon, using the following language:

"To sustain the contention that the general appropriation bill should contain nothing, save the bare appropriations of money, and that provisions for the expenditure of the money, or its accounting, could not be included therein, or that the method and means of raising the money appropriated could not likewise be included, would lead to results so incongruous that it must be presumed that the framers of the constitution had no such intent in the adoption of the restrictions referred to. We have examined general appropriation bills of various states, having somewhat similar provisions and some much more restrictive and have failed to find a single act that does not contain some provision for the expenditure and accounting for the money appropriated. To hold that such an act should contain nothing but the bare appropriation of money, would necessitate the framing and passage of numerous separate acts, making provisions for the expenditure and accounting for the money appropriated by the various items in the general appropriation bill. A brief review of the whole act now under consideration will easily demonstrate the correctness of this conclusion. * * *. What vice or evil can there be in making provisions in such an act, which are incidental to the main fact of the appropriation? The limitation was imposed upon the main act of the appropriation, and not the matters of detail connected with such appropriation. Numerous states have provi-

sions similar to that contained in the first part of section 16 supra, which require the subject of every bill to be clearly expressed in its title, and that no bill embracing more than one subject shall be passed, etc., and the courts all uniformly hold that any matter germane to the subject expressed in the title of a bill and naturally related to it is valid. When an appropriation is made, why should not there be included with such appropriation matter germane thereto and directly connected with it, such as provisions for the expenditure and accounting for the money, and the means and methods of raising it, whether it be by taxation, or by some other method? What valid objection can be interposed to such a course, so long as the Legislature confines the incidental provisions to the main fact of the appropriation, and does not attempt to incorporate in such act general legislation, not necessarily or directly connected with the appropriation legally made, under the restrictions of the section in question?" State ex rel. Lucero v. Marron, 17 N.M. 304, 128 P. 485.

To like effect are State ex rel. Whittier v. Safford, 28 N.M. 531, 214 P. 759, and State ex rel. Peck v. Velarde, 39 N.M. 179, 43 P.2d 377.

We are convinced that there is a strong majority of jurisdictions recognizing the distinction between appropriations and expenditures. Board of Education of Wyoming County v. Board of Public Works (W.Va.1959), 109 S.E.2d 552; In re Opinion of the Justice, 302 Mass. 605, 19 N.E. 2d 807; Norton v. Lusk, 248 Ala. 110, 26 So.2d 849; State ex rel. Caldwell v. Lee, 157 Fla. 773, 27 So.2d 84; State ex rel. Boyle v. Ernst, 195 Wash. 214, 78 P.2d 526, provide a few examples of jurisdictions so holding.

■ It follows from what has been said that the legislature, without the same constituting any violation of Art. IV, § 22, or Art. III, § 1, may provide in the general appropriation bill, for the executive to control the expenditure of the amounts appropriated.

■ Before discussing point 2 of Relator's brief, we would dispose of point 3. Relator here argues that § 24, Chap. 254, N.M.S.L.1961, is violative of Art. IV, § 16, New Mexico Const., in that the subject matter of the section is general legislation not contained in the title and is not an appropriation.

Art. IV, § 16, reads as follows:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if

any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void. General appropriation bills shall embrace nothing but appropriations for the expense of the executive, legislative and judiciary departments, interest, sinking fund, payments on the public debt, public schools, and other expenses required by existing laws; but if any such bill contain any other matter, only so much thereof as is hereby forbidden to be placed therein shall be void. All other appropriations shall be made by separate bills."

The title to Chap. 254, N.M.S.L.1961, reads as follows:

"The General Appropriation Act Making Appropriations and Authorizing Expenditures for Executive, Legislative and Judicial Departments, Institutions, Interest, Sinking Funds, Payment of Public Debt, Public Schools, Public Buildings and Other Expenses Required by Existing Laws During the Fiftieth and Fifty-First Fiscal Years, and Making Additional and Emergency Appropriations for the Forty-Ninth Fiscal Year."

Is the power granted in § 24, hereinbefore quoted, general legislation such as may not be included in a general appropriation bill, and is this failure to mention the general subject matter of the section in the title fatal to its effectiveness? We think not, and to support our conclusion need only cite State ex rel. Lucero v. Marron, supra, and the language already quoted therefrom which we consider decisive of this issue. As further support of our conclusion we quote the following from State ex rel. Whittier v. Safford, supra:

"The object and purpose of the constitutional provision quoted was to protect the treasury against legislative raids by the insertion of special appropriations for new purposes in a general appropriation bill where they might easily pass unnoticed. When careful consideration of such items upon their merits, which might be had if presented separately, would result in their defeat by reason of their doubtful strength. The further purpose was to prevent the passage of general legislation as a part of such bill, which in no way was connected with the subject of making provision for the expenses of the government. The term 'general appropriation bills shall embrace nothing but appropriations,' as used, means that no appropriations other than those specified shall be valid if placed in such general appropriation bill. To sustain appellant's contention would result in holding that nothing but bare appropriation shall be incorporated in such

general appropriation bill. This is neither the purpose nor spirit of the constitutional provision under consideration. The details of expending the money so appropriated, which are necessarily connected with and related to the matter of providing the expenses of the government, are so related, connected with, and incidental to the subject of appropriations that they do not violate the Constitution if incorporated in such general appropriation bill. It is only such matters as are foreign, not related to, nor connected with such subject, that are forbidden. Matters which are germane to and naturally and logically connected with the expenditure of the moneys provided in the bill, being in the nature of detail, may be incorporated therein. Otherwise everything connected with the expenditure of money provided in the general appropriation bill would have to be provided in separate and special acts of the Legislature—a condition which was never intended."

■ We pass now to point 2 of Relator's brief which is beyond a doubt the most troublesome of the points presented. It is Relator's position that § 24 is unconstitutional as violative of Art. III, § 1, of the New Mexico Constitution, since standards for the exercise of the power purportedly conferred are lacking.

As already noted in our discussion of point 1, ours is a government by three separate departments, and each is to be kept free from encroachments by the others, but that there are areas of permissible and necessary overlapping as between the legislative and executive. State ex rel. Dickson v. Saiz, supra; 1 Davis, Administrative Law Treatise, § 2.07. Now, under point 2, Relator argues that where the legislature purports to delegate powers such as those contained in § 24, standards for the exercise of the same must be provided, or the delegation cannot be sustained.

Respondent, in its brief, agrees that reasonable standards must be provided by the legislature as a guide in the exercise of the discretionary powers conferred, but asserts that they have been sufficiently supplied to withstand the attack of Relator.

The standards to which Respondent points are those which it asserts have been the guides by which it has historically considered itself bound and which it has utilized for making its determination, namely, "necessity and availability of revenues." It is pointed out that historically, appropriations have been made in certain amounts, but qualified by the phrase, "or so much thereof as may be necessary" or similar language having the same meaning. It is asserted that since 1933 the appropriations have also been limited by the qualifying phrase, "not in excess of available revenues" or similar language, and particular attention

is called to the fact that in § 1, Chap. 254, N.M.S.L.1961, it is stated that appropriations therein provided for, "or so much thereof as may be necessary within the available revenues * * *." are made from the general fund for the legislature and judiciary.

§ 5 provides that the appropriations therein are made to educational institutions provided they are "not in excess of available revenues." To like effect is the condition contained in § 6 providing appropriations to hospitals, correctional and other institutions. § 7, containing the appropriations to agencies operating with dedicated funds, provides that appropriations are made "from revenue available for the administrative costs of each department as provided by law. No department or agency * * * shall exceed the amounts designated for administrative costs * * *." The argument proceeds that this language used over and over again by the legislature provided guides and standards which the board of finance couldn't misunderstand, and that all that is required in this regard is that the standards be sufficiently clear for the administrative agency to be able to know its rights, obligations and limitations, citing State ex rel. Anderson v. Fadely, 180 Kan. 652, 308 P.2d 537.

Respondent finds additional standards to guide it in the supervision "of the safe keeping" of all public moneys, and of "all the fiscal affairs of the state" granted to it in 1915 (Laws 1915, c. 57) and continued in various forms until 1957 when the powers previously exercised over budgets were transferred to the department of finance and administration, all as is set out in detail in State ex rel. Lee v. Hartman, supra. These powers included "supervision and control" of budgets, with a provision that no expenditure could be made until the budgets were approved by the state board of finance. (§ 11–4–1, N.M.S.A.1953). In 1957, by Chap. 253, the legislature repealed this authority and granted it to the department of finance and administration.

Reference is also made to the provision in § 17, Chap. 48, N.M.S.L.1923 (§ 11–1–19, N.M.S.A.1953), that the comptroller should have "general superintendence of the fiscal affairs of the state under the supervision and direction of the state board of finance," and that all officials concerned in the financial operations of the state should perform their duties so as to " * * * subserve the best interest of the public." This authority was likewise repealed in 1957 (§ 18, Chap. 248, N.M.S.L.1957).

As we appraise Respondent's position, it can be characterized as recognizing that standards must be supplied by the legislature, and that the requirements in this regard are met by the historic powers with which the finance board has been invested since it was first created in 1915, which are to be taken as an expression of legislative policy and direction, together with the lim--

itations contained in §§ 1, 5, 6, and 7, Chap. 254, N.M.S.L.1961, and similar limitations contained in each general appropriation act for many years past.

We think the fallacies in Respondent's argument are obvious. First, the historic powers of the board of finance, were repealed in 1957, and most of the powers given to the department of finance and administration. Possibly, the argument concerning historic powers might have some weight if we were considering the power comparable to that contained in § 24, Chap. 254, N.M.S.L.1961, as provided in § 15, Chap. 235, N.M.S.L.1957, being the general appropriation bill for that year, inasmuch as the authority to reduce annual operating budgets was there given to the department of finance and administration with the approval of the state board of finance. However, this provision appears in the 1957 law only. Although we doubt the force of the argument, we would point out that was the year in which the legislature created the department of finance and administration, and established its duties. Evidently in 1959 and 1961, it decided that the authority should be returned to the finance board, but now the historical powers are no longer exercised by it, so how the historical argument lends any support whatsoever to respondent we are unable to understand.

Next, let us consider the provisions of §§ 1, 5, 6 and 7 of Chap. 254, N.M.S.L.1961.

We have already referred to the differences in the language of the four sections. Would respondent apply the standard of "necessity" and "availability" of funds to the appropriations in § 1, and only the standard of "availability" to the appropriations in §§ 5, 6 and 7, or would it apply both standards to all appropriations?

As its argument proceeds, we consider its position to be that these are the standards to be applied to all appropriations. Then we are moved to ask, where can the legislative direction to do so be found in § 2 which covers appropriations to executive offices, agencies and departments, in which is included the State Tax Commission? Is there any significance to be attached to the fact that in this section there is no qualification as to "need" or "availability" of funds or anything else? We believe so. We are particularly impressed that this is true because in 1955 and 1957 the general appropriation bills included comparable qualifying language in the appropriation for the agencies among which was included the State Tax Commission. Accordingly, assuming that we were persuaded by the logic of Respondent's argument and might consider that the 1955 and 1957 acts (§ 1, Chap. 287, N.M.S.L.1955; § 1, Chap. 235, N.M.S.L.1957) provided sufficient standards, it would be equally clear that they had been omitted from the 1961 act.

However, over and beyond the logic of the matter as above set forth,

we find in § 24 nothing whatsoever to indicate that the legislature was granting the authority to be exercised only in the circumstances and under the conditions which respondent says it has imposed upon itself. As we read the section, the grant is absolute and is totally devoid of restraints, direction or rules. Accordingly, the fact that respondent acted only under certain self-imposed restraints can in no way serve to supply what has been omitted. It is not what has been done but what can be done under a statute that determines its constitutionality. State v. Spears, 57 N.M. 400, 259 P.2d 356, 39 A.L.R.2d 595; People v. C. Klinck Packing Co., 214 N.Y. 121, 108 N.E. 278; Northern Cedar Co. v. French, 131 Wash. 394, 230 P. 837; Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854; South Carolina State Highway Department v. Harbin, 226 S.C. 585, 86 S.E.2d 466; Noel v. People, 187 Ill. 587, 58 N.E. 616, 52 L.R.A. 287; Steinacher v. Swanson, 131 Neb. 439, 268 N.W. 317. As we see it, the Respondent is free to impose a reduction of 1%, 5%, or 10% on the operating budgets, simply if it is of the opinion the legislature has been overly generous. This might be applied to one agency, department, or institution or to all. It could be applied equally to those agencies and departments supported by the general fund and to those getting their support from dedicated funds, or to one or more of them. The Respondent is in no way inhibited by anything that we can see in Chap. 254, N.M.S.L.1961, in general, or in § 24 in particular.

Likewise, as we see it, the provision in Chap. 254 qualifying the appropriations by the language, "or so much thereof as may be necessary within the available revenues" as appears in § 1, or the words, "not in excess of available revenues" as stated in §§ 6 and 7, are limitations on the appropriations themselves. They are effective whether or not the state finance board reduces budgets, and accordingly to hold that such powers could be exercised by the finance board only under the recited conditions, really would accomplish nothing.

We would direct attention to the restraints contained in Art. IX, §§ 7 and 8, of our Constitution, placing a limit on borrowing to meet deficits, and restrictions on creating indebtedness against the state. These provisions are effective whether or not any agency is vested with the power to reduce budgets.

The attempted delegation must fail because no standards have been provided. McAdoo Petroleum Corporation v. Pankey, 35 N.M. 246, 294 P. 322. State ex rel. Zimmerman v. Dammann, 229 Wis. 570, 283 N.W. 52, is directly in point. The case involved consideration of whether or not sufficient standards were provided by the legislature to guide an administrative agency in the exercise of its discretion when it was given the control over applica-

tion of public funds. We quote the following from the case:

"In each of those sections it is provided that 'The amount herein appropriated shall not become effective or available until released in whole or in part by the emergency board'. By that provision the legislature has attempted to delegate to that board the power to render the appropriations in question either effective and available, or wholly or in part ineffective and not available, as well as the power to determine when, if at all, they shall be available and subject to transfer and disbursement by the Secretary of State and the State Treasurer, respectively. Thus in those provisions there is no exercise by the legislature of its 'exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government.' * * * "

Respondent attempts to distinguish this case by pointing out that the provisions held unconstitutional gave the board control not only of the expenditure of funds but over the very existence of the appropriation itself. However, we do not so understand that opinion. The defect was stated to be a failure of the exercise of the legislature of its "exclusive power of deciding how, when and for what purpose the public funds shall be applied in carrying on the government." This refers to the spending of the money.

If Respondent should make a 10% reduction in the budget of some agency regardless of need or availability of funds, and so far as we can see, there is nothing to prevent it, the exact same result would follow here as was present in Wisconsin.

The briefs of both parties contain discussions on the sufficiency of standards which may be provided in order to withstand an attack. This court has had several occasions for determining whether standards were required and the sufficiency of those imposed. In this connection we call attention to State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 67 P.2d 240; State v. Spears, supra; Hatfield v. New Mexico State Board of Registration etc., 60 N.M. 242, 290 P.2d 1077; Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449, to cite a few.

In State ex rel. Sofeico v. Heffernan, supra, is language to the effect that failure of the legislature to provide detailed standards to guide an administrative officer may not make an act unconstitutional in certain situations "where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare." However, we do not perceive how the instant situation comes within the exception. As is clear from an examination of Board of Education of Wyoming County v. Board of

Public Works, supra (discussed post), it is not too difficult or impractical to provide standards. Neither is it a police regulation, nor is it necessary for the public welfare. We do not consider McCormick v. Board of Education, etc., 58 N.M. 648, 247 P.2d 299, in point, it having been there held that the powers conferred came within the exceptions quoted from State ex rel. Sofeico v. Heffernan, supra. The same is true of Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449. Hatfield v. New Mexico State Board of Registration, supra, and City of Albuquerque v. Burrell, 64 N.M. 204, 326 P.2d 1088, are of no aid to respondent, the legislature having in both cases provided standards found by this court to be sufficient to meet all constitutional requirements.

Respondent advances certain other arguments in support of its position, including the fact that the power has been exercised for many years without being challenged, and that the Attorney General has at least on one occasion found similar provisions to be constitutional and that control over Respondent's exercise of its discretion is provided by the presence of legislative supervision and judicial review.

We have considered all these arguments but find that none of them are sufficient to save § 24 since the legislature has in no way provided any standards to guide the Respondent in its actions thereunder and such failure is fatal to the constitutionality of the provision.

The case of Board of Education of Wyoming County v. Board of Public Works, supra, is a recent case in which the West Virginia Supreme Court held valid as not an unconstitutional delegation of legislative power a statute which contained the provisions that if the board of public works "determines that the amounts, or parts thereof, appropriated from the general revenue cannot be expended without creating an overdraft or a deficit in the general fund, it may instruct the director to reduce equally and pro rata all appropriations out of general revenue in such a degree as may be necessary to prevent an overdraft or a deficit in the general fund." A comparison of the West Virginia provision quoted and § 24, here under consideration, should serve clearly to demonstrate examples of what could have been supplied by way of standards in § 24. By this comment we do not wish to be understood to be giving approval to the standards there provided. Our reference is merely to standards which have withstood attack, and which can be cited as lending support to our conclusion that difficulty or impracticality of definition is not a valid argument obviating the necessity of standards.

It follows from what has been said that the unrestricted and unguided power contained in § 24 is an unconstitutional grant to Respondent of a legislative power and that Respondent may not legally proceed

thereunder. The writ heretofore issued is accordingly made permanent.

It is so ordered.

CARMODY, CHAVEZ and NOBLE, JJ., concur.

COMPTON, C. J., not participating.