314 P.2d 390

**STATE of New Mexico, on the relation of John H. BLISS, State Engineer, Plaintiff-Appellant,**

v.

**The POTTER COMPANY, a corporation, Defendant-Appellee.**

No. 6150.

Supreme Court of New Mexico.

Aug. 12, 1957.

Fred M. Standley, Atty. Gen., Charles D. Harris, Sp. Asst. Atty. Gen., for appellant.

Stagner, Sage & Walker, Carlsbad, G. T. Watts, Roswell, for appellee.

McGHEE, Justice.

The State Engineer sued to enjoin the use of water from the Roswell Artesian basin on certain parts of two farms, owned by the defendant, one known as the East Second Street farm east of Roswell, and the other as the Strickland farm in the East Grand Plains neighborhood southeast of Roswell. The injunctions were denied following a decision below that the defendant had valid water rights on the lands in dispute and this appeal followed.

There was a 34.28 acre tract involved on the first mentioned farm from which the water had been transferred to another tract, but notwithstanding such fact the trial court held the defendant had a valid water right on such acreage. On appeal the defendant has confessed error as to such acreage, and therefore such part of the judgment will be reversed without further discussion.

This leaves for our consideration the claim of the State Engineer that the trial court erred in its decision as to the disputed tracts on the old Strickland farm, the first described in the exhibits and briefs as tract A containing 48.2 acres, and the other described as tract B containing 57.53 acres.

We will first consider the claim of error as to tract A and the record relating thereto.

On August 15, 1927, the then owners of the tract (with other lands) filed in the office of State Engineer a declaration of owners of water rights from an artesian well drilled in 1906 and located in the west half of lot 21, Pomona Farms, section 2, for the irrigation of 240 acres. The declaration was numbered RA649 in the office of State Engineer. This well is also known as W-44. It was stated in the declaration that the well flowed 450 gallons of water per minute.

On October 12, 1929, there was filed in the office of State Engineer by Arthur F. Brown, the then Artesian Well Supervisor, a report of a survey of the lands being irrigated on the Strickland farm which showed the lands were irrigated in patches with part laying out. He reported that tract A showed no evidence of ever having been irrigated, and it was designated as "D-S", which meant it was in salt grass and spotted with seep or sweat and usually spotted with gyp soil.

On February 15, 1935, the General American Life Insurance Company, which had succeeded to the ownership of the Strickland farm, and a predecessor in title

of the defendant, filed in the office of State Engineer an application to replace well W–44. The application stated, among other things:

"The above described land has been irrigated from well W–44 (RA649). We propose to plug the well in accordance with the methods prescribed by the State Engineer and to irrigate only the land having legal rights under the file mentioned in this paragraph."

The application asked for an appropriation of 1,500 gallons per minute, although the declaration recited the flow was only 450 gallons per minute.

The State Engineer caused an investigation to be made by the then Artesian Well Supervisor of the land being watered from the old well, and of the flow of the well. The supervisor reported that while Mrs. Strickland had declared her rights for the entire acreage of the tract of land in question, he found only 176.7 acres of land out of the 240 acres to be in cultivation which he said would represent the then rights to which water could be supplied.

The application to plug the old well and drill a new one was approved by the State Engineer on May 20, 1935, subject to the following condition:

"Rights restricted to 3 acre feet per acre per annum on 176.7 acres actually had waters beneficially applied."

The permit to drill with this limitation was accepted by the insurance company and the new well drilled. The land then passed into the ownership of Hal Bogle, a man experienced in irrigated farming and one of the largest owners of such land in the Pecos Valley, who made proof of the completion of the well and application of its waters to 176.7 acres. There is nothing in the record indicating any protest by the insurance company or Mr. Bogle because of the limitation to 176.7 acres.

The application to plug the old well and drill a new one was made pursuant to the requirements of c. 131, L.1931, and a statutory condition of the granting of such permits is that the drilling of a new well will not prejudice existing rights in the underground basin.

The defendant here attacks the constitutionality of the section and says the action of the State Engineer in attempting to limit the acreage was a nullity, in that such reduction would be denying him vested rights to the use of water, as the water rights on the land in question were vested at the time of the passage of 1931 act, and that the State Engineer was attempting to exercise judicial functions; that only a court of competent jurisdiction had jurisdiction to pass upon his rights, and that even fifteen years later he could attack the action of the engineer, notwithstanding the failure of his predecessors in title to appeal to the courts from the action of the engineer.

The defendant met the case of the plaintiff below head on in a battle of facts, and made no assault whatever upon the powers of State Engineer as enumerated in chapter 131, or the legality of his action in limiting the acreage to be irrigated from the new well. He contended the land, tract A as well as tract B, had been almost continuously irrigated for many years prior to 1931 and thereafter, and that there had not been a non-user of the water on such land for any four year period. Such being the case he can not be heard in this Court on these legal questions.

We have many times held that questions not raised below may not be raised here, unless they go to the jurisdiction of the court, one of the later pronouncements being Hatfield v. New Mexico State Board, 60 N.M. 242, 290 P.2d 1077.

The evidence offered by the defendant as to the use of water on tract A is vague and unsatisfactory when we weigh it in opposition to two hydrographic surveys and one aerial photographic survey made in different years, showing this tract to be unirrigated salt grass land; and these facts taken in connection with the acquiesence of the former owners in the permit and license for the new well compel us to hold the trial court erred in its finding that this tract had a valid water right.

We have a different situation as to tract B. Here the defendant produced witnesses who farmed the tract, as well as neighbors who saw the land being worked and certain crops growing thereon, although there is a scarcity of evidence as to the quantity of crops harvested. The aerial photograph is rather dim and unsatisfactory, but it is clear there were ditches on the exterior lines from which this tract could have been irrigated. The tract is in a depression or old lake bed and at least before certain leveling and grading work was completed, water ran on it from surrounding land.

In view of the record as to this tract B we are not prepared to hold the evidence in support of the trial court's findings was not substantial, and the judgment as to this tract will be affirmed.

We do not want to be understood as disparaging these hydrographic surveys made by the State Engineer and his staff at a time when there was no real dispute as to the tracts being irrigated. They were made by competent engineers on the ground and from the best information available, and are therefore deserving of serious consideration by fact finders.

The judgment will be reversed in part and affirmed in part as above indicated, and the cause remanded for further proceedings in accordance with the views herein expressed.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON, and KIKER, JJ., concur.