[No. 3452.   Oct. 28, 1930.]

[Rehearing Denied Dec. 22, 1930.]

McADOO PETROLEUM CORPORATION v.
PANKEY, State Com'r. of Public Lands.

[294 Pac. 322.]

M. A. Otero, Jr., Atty. Gen., and Charles B. Barker,
of Santa Fe, for appellant.

Roberts & Brice, of Santa Fe, for appellee.

OPINION OF THE COURT

BICKLEY, C. J.

This is an action in mandamus brought by appellee
against the commissioner of public lands of the state of
New Mexico, in the district court of Santa Fe county, to
compel the commissioner to draw his vouchers upon the
state auditor in the amount of $1,892.08, against the com-
mon school income fund, the military institute income
fund, the normal eastern income fund, and the suspense
account of the commissioner of public lands to result in
warrants upon the state treasurer, aggregating the said

sum. Appellee prevailed in the district court, and the commissioner appeals.

Appellee claims that the commissioner in 1925 demanded rentals on an oil and gas lease in excess of what, under the law and the terms of the lease, it was obliged to pay. It paid such alleged excess under protest. Appellant urges eight grounds for reversal of the judgment, six of which relate to procedure. He urges that the action is in effect a suit against the state. The appellee concedes that the state cannot be sued without its consent, but contends that the writ of mandate in this case requires of the commissioner a purely ministerial act not involving direction.

The principal, if not the sole reliance of appellee to support such contention, is upon the act of the Legislature of 1912 appearing as section 10 of chapter 82 of the acts of that year (section 132—110, 1929 Comp.) as follows:

"Any money erroneously paid on account of any lease or sale of State lands shall be repaid by voucher drawn by the Commissioner presented to the State Auditor who shall draw his warrant upon the State Treasurer for the amount thereof, who shall pay same out of the fund to the credit of which said money was placed."

It is urged that this is a provision for the return of money that never belonged to the state and in which the public was in no manner interested.

Appellant asserts that this statute violates the provisions of section 30 of art. 4 of the Constitution of New Mexico and is therefore void. Said section is as follows:

"Except interest or other payments on the public debt, money shall be paid out of the treasury only upon appropriations made by the legislature. No money shall be paid therefrom except upon warrant drawn by the proper officer. Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied."

Section 16 of the same article is as follows:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void. General appropriation bills shall embrace nothing but appropriations for the expense of the executive, legislative and judiciary departments, interest, sinking

fund, payments on the public debt, public schools, and other ·expenses required by existing laws; but if any such bill contain any other matter, only so much thereof as is hereby forbidden to be placed therein shall be void. All other appropriations shall be made by separate bills."

We cannot doubt that the Legislature attempted to ·do justice by the enactment in question. It had its counterpart during territorial days in section 38 of chapter 104, Laws 1907. Legislation designed for a similar purpose appears in the Taxation Code as section 141—404, 1929 Comp. That act, however, provides that taxes claimed to have been erroneously paid be held in a suspense fund until legal proceedings for the determination of the right thereto shall have been concluded, at which time they shall be disposed of in accordance with the final judgment of the district court.

But no matter how beneficial or wise the legislation, it must be conceded that the Legislature must have complied with constitutional requirements in passing the act.

That the moneys claimed by appellee to have been erroneously paid to the commissioner have been received by the state treasurer and by him accredited to particular funds, and have become commingled with other moneys in said funds, so that they are not earmarked and cannot be distinguished from any other money, is not controverted. It is asserted by appellant and not denied that such money has been paid out from time to time in accordance with the law as proper demands have been made upon the state treasurer.

There can be no doubt, therefore, that the money appellee desires to be paid out under the section of the statute quoted, supra, is money in the state treasury, or that, in order to get it out, it must be taken from the state treasury. This brings it within the prohibition of section 30 of art. 4 of the Constitution aforesaid; it can be paid out "only upon appropriations made by the legislature," and by virtue of a law which shall "distinctly specify the sum appropriated and the object to which it is to be applied."

Section 16 of the same article declares that, except for the purposes which may be embraced in general appropri-

ation bills, the moneys in the state treasury may be appropriated only by separate bills, and, under section 30 of the same article, such separate bill must distinctly specify the sum appropriated and the object to which it is to be applied.

By no stretch of construction can this statute be transformed into such a specific appropriation as the Constitution requires. This section was enacted in 1912. If it has any force at all, therefore, instead of being a specific appropriation, it authorizes warrants for as many different items due to different persons, embracing every payment which the commissioner might conclude has been erroneously made in any and every year since 1912, or which may hereafter be made. It does not require an adjudication by legal proceedings that the payment is erroneous. It does not distinctly specify the sum which the Commissioner is authorized to voucher for payment. It does not even set a maximum amount to be drawn upon for such erroneous payments. It embraces as many items as there may be persons having claims or erroneous payments as might be able to convince the commissioner of the correctness of such claims.

The suggestion that no injury could be done the public by a withdrawal from its treasury of money to which it was never entitled in fact, and that, if the commissioner should voucher an unfounded claim, it would not constitute an adjudication in favor of the claimant, but the money paid could be recovered back, does not weigh against the strict provisions of the Constitution which were designed to secure to the Legislature the exclusive power of deciding how, when, for what purposes, and in what amounts, the moneys in the treasury shall be paid out.

The conclusion we have reached is supported in principle by many decisions, the following being cited as involving statutes similar to the one in question. See Lepanto Special School Dist. v. Cone, 176 Ark. 1178, 5 S. W. (2d) 332; Oliver v. Bolinger, 146 Ark. 242, 225 S. W. 314; Westinghouse Electric & Mfg. Co. v. Chambers, 169 Cal. 131, 145 P. 1025; Fergus v. Russel, 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120.

We think there is nothing to the suggestion that the commissioner should be required to draw his voucher even if the state treasurer is without authority to pay a warrant drawn by the state auditor, based upon such voucher. The statute is as obligatory upon the treasurer to pay the warrant as upon the auditor to draw it or upon the commissioner to issue his voucher. It would be an entirely useless ceremony for the commissioner to draw a voucher resulting in a warrant upon the treasury which could not be collected or paid by the treasurer.

Having reached the conclusion that the statute upon which appellee relies is void, for the reasons heretofore stated, it is unnecessary to decide the other interesting questions presented and ably argued by learned counsel in the case.

The judgment of the lower court is reversed, and the cause remanded, with directions to discharge the writ, and it is so ordered.

WATSON and SIMMS, JJ., concur.

PARKER and CATRON, JJ., did not participate.

## ON MOTION FOR REHEARING

BICKLEY, C. J.

It is strongly urged that we have overlooked an important consideration, namely, that the constitutional inhibition applies only to the state's money; and that we have applied it to money not the state's, though in its treasury. By failing to notice this distinction we have, as counsel argue, rendered a sweeping decision which makes it impossible for the state to carry on ordinary business transactions, authorized and required by statute and indispensable to administration. Remittances accompanying applications for lease or purchase of state lands, certified checks to accompany bids on contracts for public works, court costs paid in advance, are given as illustrations of ordinary business practices rendered henceforth impracticable. Distribution of the proceeds of motor vehicle licenses, and of the state school levy are given as illustrations of statutes disclosed by this decision to be unconstitutional. Pay-

ment of expenses of the board of bar examiners out of the special fund arising from examination fees is cited as an instance of numerous statutes creating special funds devoted to particular purposes. It is even suggested that it will no longer be possible for the state treasurer to invest the trust funds as the enabling act directs.

Counsel are mistaken in assuming that we overlooked the possibility that the broad constitutional provision might require interpretation, to avoid hampering necessary and legitimate transactions, and still to prevent the evils the Constitution makers aimed at. But we did not and do not think that the present case calls for such interpretation. It does not remotely resemble any of the cases suggested by way of illustration. We are not dealing with moneys paid in to a state agency "on deposit, in escrow, or in evidence of good faith * * *" not yet "earned so as to become the absolute property of the state," situations contemplated in the Public Moneys Act, 1929 Comp., § 112—102. The commissioner has determined that these moneys are the "absolute property of the state"; not that they "should be returned, repaid or refunded." 1929 Comp. § 112—122. Nor are we dealing with special funds accumulated in the treasury for specific purposes. The constitutionality of the Public Moneys Act and of the various other statutes is not before us. We are concerned with 1929 Comp. § 132—110, upon which appellee relies. In so far as that statute assumes to authorize repayments of moneys covered into the treasury and funded, as the property of the state, on the mere say-so of an administrative officer, we hold it unconstitutional.

We need not here deny that in many instances the proper test may be whether the moneys sought to be paid out are the property of the state. But where the proper administrative officer has received the money as the property of the state and has covered it into the treasury as such, it is thenceforth conclusively state property. Only the Legislature may determine that it was erroneously exacted and may be returned. To hold otherwise would be to inaugurate a system of continuous review by administrative officials of their own and their predecessors' acts. It would not only lead to great confusion in the administration of

the state's business, but it would open the door to fraud and to the irresponsible and irregular dissipation of the state's funds—evils the Constitution makers obviously intended to prevent.

The motion for rehearing is denied.

SIMMS and WATSON, JJ., concur.

PARKER and CATRON, JJ., did not participate.