13 P.(2d) 559

**GAMBLE v. VELARDE, State Auditor.**

**No. 3820.**

Supreme Court of New Mexico.

Aug. 3, 1932.

Sam G. Bratton, of Albuquerque, and Carl A. Hatch, of Clovis, for plaintiff.

Charles Fahy, of Santa Fé, and E. K. Neumann, Atty. Gen., for defendant.

WATSON, J.

This is an original action in mandamus to compel the state auditor to issue a warrant upon the special suspense fund in the state treasury, for payment of plaintiff's claim, approved by the state comptroller, for refund of the excise tax collected upon sales of gasoline used otherwise then in motor

vehicles operated on the public highways. L. 1931, c. 31.

The cause is before us upon an alternative writ, an answer, and a stipulation of facts. Questions of law only are presented. The most important is whether defendant may issue the warrant without violating N. M. Const. art. 4, § 30: "Except interest or other payments on the public debt, money shall be paid out of the treasury only upon appropriations made by the legislature. No money shall be paid therefrom except upon warrant drawn by the proper officer. Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied."

Prior to the passage of the Refund Act (L. 1931, c. 31), existing laws imposed excise taxes on gasoline. 1929 Comp. St. §§ 60-101, 60-203. Such taxes were collected by the state comptroller. Id. §§ 60-105, 60-209. They were to be paid into the state treasury and covered into the state road fund, to be used for "maintenance, construction and improvement of state highways and to meet the provisions of the federal aid road law." Id. § 60-205. But prior to the claim of the road fund was that of the principal and interest of road debentures, for which the proceeds of these taxes had been pledged. Id. § 60-205; Streit v. Lujan, 35 N. M. 672, 6 P.(2d) 205.

The last Legislature adopted the policy of refunding these excises to the purchasers in cases where the gasoline was purchased for use and was used otherwise than in operating vehicles on the highways. To that end it required the seller to give a receipt which the purchaser might present to the comptroller with his application for the refund, and with prescribed evidence of his right. It was provided that upon presentation of the prescribed proof the comptroller should "cause to be refunded to said claimant consumer, from the gasoline or motor fuel taxes collected, * * *" the amount to which the claimant appeared to be entitled under the act.

Section 4 reads as follows: "The State Comptroller, for the purpose of making the refunds provided in this act, is hereby authorized to create a special suspense fund with the Treasurer of the State of New Mexico, in sufficient amount to pay all legal claims made in conformity with the provisions of this act, from the funds derived from the excise tax on gasoline and motor fuel as and when available. At the expiration of six months after the taking effect of this Act, the State Comptroller shall estimate the amount of funds necessary to make the refunds authorized herein, and shall keep an amount available at all times to meet the requirements of the provisions of this act. Any surplus fund over and above the estimated amount in such special suspense fund shall forthwith be turned into the highway funds of the State of New Mexico, to be distributed as provided by law."

In refusing to issue the warrant, and in answering the alternative writ, defendant has taken the position that this statute merely creates the obligation to refund if succeeding Legislatures shall make appropriation

therefor; that it makes no appropriation. If such is the situation, it will result either from legislative intent or from constitutional limitation.

Considering the legislative intent, we do not question the rule invoked by defendant that mandamus lies only for the enforcement of a plain statutory right. Carson Reclamation District v. Vigil, 31 N. M. 402, 246 P. 907.

Yet we cannot doubt that the Legislature contemplated present refunds—not possible future refunds at the will of coming Legislatures. It directed the comptroller "to cause (the proper amounts) to be refunded." It laid down the rule for determining the proper amounts, and prescribed the proofs which the comptroller should accept as sufficient. It specified the proceeds of the excises as the larger fund, from which the comptroller should create in the treasury a special suspense fund for the purpose. It directed that the suspense fund be maintained at an amount sufficient to meet the claims upon it.

As to the meaning of "appropriation" and as to the legislative intent to make an appropriation, judicial expressions more or less conflicting have been brought to our attention. We consider that the intent to make an appropriation is plain on the face of the statute. Precedents in this jurisdiction favor this view. State ex rel. Fornoff v. Sargent, 18 N. M. 272, 136 P. 602; Dorman v. Sargent, 20 N. M. 413, 150 P. 1021; State ex rel. Delgado v. Sargent, 18 N. M. 131, 134 P. 218.

So we reach the main question. Does the legislative attempt fail because of constitutional limitation upon its power to make an appropriation?

Here the rule of construction changes. "The Legislature is a co-ordinate branch of our state government. Its prerogative in the matter of legislation is to be questioned solely from the standpoint of our federal or state constitutional limitations. The function of the courts in scrutinizing acts of the Legislature is not to raise possible doubt nor to listen to captious criticism. The Legislature possessing the sole power of enacting law, it will not be presumed that the people have intended to limit its power or practice by unreasonable or arbitrary restrictions. Every presumption is ordinarily to be indulged in favor of the validity and regularity of legislative acts and procedure." State v. Armstrong (Rehearing), 31 N. M. 254, 243 P. 333, 347. A reasonable construction of a constitutional limitation on legislative power or practice requires "the court to keep in mind the sound purpose of the provision and the existing or anticipated evil to be overcome or avoided. * * *" State v. Armstrong (Rehearing), 31 N. M. 254, 243 P. 333, 348.

No great aid is to be had from precedents; there being such a variety of constitutional limitation regarding the appropriation and expenditure of public moneys. As a matter of distinguishing decisions, it will be well to remember that our Constitution is one of the newest. It will be judged not only by what it says, but by what it omits to say —what it might have adopted from other Constitutions and did not.

The stock formula is that of the Federal Constitution: "No money shall be drawn from the treasury, but in consequence of appropriations made by law." Article 1, § 9.

That, in its substance, is to be found in all our State Constitutions. The principle had been worked out in England in the long struggle between crown and parliament for control of the purse. It is so inherent in popular government, and particularly in one of divided powers, that it may be doubted if the provision does more than expressly set forth and set at rest what statesman and jurist would have been compelled to conclude if it had been left to inference. Colbert v. State, 86 Miss. 769, 39 So. 65.

Be that as it may, we have never encountered any other claim as to the purpose of the provision than that it is to insure legislative control, and to exclude executive control, over the purse strings.

. Certain State Constitutions, while retaining the original formula, have added to it provisions which in the particular case, may or may not disclose other purposes. Numerous Constitutions limit the life of appropriations, generally to two years. Many decisions defeating the apparent legislative intent to make appropriations have turned on this point. Some have made the provision applicable not only to payments from the treasury, but from any fund owned or controlled by the state. The Arkansas Constitution requires that "the maximum sum which may be drawn shall be specified in dollars and cents." In Illinois an independent constitutional provision requires that aggregate appropriations shall not exceed revenues authorized to be raised. In Fergus v. Russel, 270 Ill. 304, 110 N. E. 130, 134, Ann. Cas. 1916B, 1120, this was deemed enough to condemn an appropriation "of such sums as may be necessary to refund * * * taxes * * * paid on error, * * *" since the indefiniteness of the appropriation would unbalance the budget.

The original formula may well be considered as a limitation upon executive power, and as an assertion, rather than a limitation, of legislative power. This thought is suggested in the able opinion in State ex rel. Birdzell v. Jorgenson, 25 N. D. 539, 142 N. W. 450, 49 L. R. A. (N. S.) 67. It was referred to with approval in Edwards v. Childers, 102 Okl. 158, 228 P. 472.. The North Dakota Constitution has added no embellishment to the common formula. The Oklahoma Constitution, like ours, requires distinct specification of the sum appropriated and of the object to which it is to be applied.

In this view of the matter, it is odd that the provision designed to prevent executive encroachment has been so often invoked by the executive in challenging legislative power.

Our Constitution makers have added to the original formula only that the sum appropriated and the object to which it is to be applied be distinctly specified. The thought arises that little has been added, since necessarily some specification of object and sum are essential to an appropriation.

But it is in form a limitation on the Legislature. And it evidences some concern that, under the stock formula, the executive might have too free a hand in expenditure.

While defendant puts greatest stress upon specification of "sum," we think that specification of object is of equal, if not greater, importance. Even if a maximum sum be designated, a loosely defined object amounts to surrender of the purse strings. That was fatal in McAdoo Petroleum Corporation v. Pankey, 35 N. M. 246, 294 P. 322, 324. There the Legislature had authorized the commissioner of lands to draw money out of the treasury upon his own uncontrolled finding that an erroneous payment had been made. We pointed out that it was for the Legislature to determine the erroneous character of payments which should be returned. Otherwise we said we should "open the door to fraud and to the irresponsible and irregular dissipation of the state's funds—evils the Constitution makers obviously intended to prevent."

The situation is quite different here. The single object is to make refunds according to an invariable rule. The Legislature has both defined the right and specified the proof. The comptroller is vested with no discretion. He is merely the instrument of the legislative will and policy. The statute could not be more specific as to object without naming the beneficiaries. This it could not do. To hold it necessary would be to hamper or prevent legislative policies frequently desirable and usually considered legitimate, without serving any constitutional end. We are satisfied that the statute distinctly specifies the object to which the appropriation is to be applied.

The "sum appropriated" must also be distinctly specified. That is not to say that the sum to be "paid out" or expended must be accurately determined in advance. That a maximum amount or limit be fixed, is all that the language requires.

If "sum" means an amount to be expressed in dollars and cents, defendant's position is impregnable. Such is really defendant's contention. To the contrary, it is presented that the language does not require it; that such an interpretation would be strict, unreasonable, and arbitrary; that it would merely hamper legislation without promoting the constitutional purpose; and that such purpose is as well accomplished by limiting the aggregate of the payments to a special fund, all of which is dedicated to the specified object, or so much of it as may be necessary.

The legislative policy is plain. Having from the beginning dedicated this particular revenue to the roads, it now determines to withhold sufficient of that particular revenue and special fund to accomplish its present purpose. The present appropriation is limited both to the aggregate of legitimate claims and to the particular fund dedicated. This does not seem to us to surrender the purse strings. If surrender there be, it is more in the original object of "maintenance, construction and improvement of state highways and to meet the provisions of the federal aid road

law" than in the present object of making refunds. As to "sum," both have the same limitation. As to object, the former is less distinctly specified than the latter.

Plaintiff cites Gafill v. Bracken, 195 Ind. 551, 145 N. E. 312, 146 N. E. 109; Ryan v. Riley, 65 Cal. App. 181, 223 P. 1027; McConnel v. Gallet (Idaho) 6 P.(2d) 143; State v. Iverson, 125 Minn. 67, 145 N. W. 607; State ex rel. Ridgell v. Hall, 99 Neb. 89, 155 N. W. 228, 156 N. W. 16. True the Indiana, California, Idaho, and Minnesota Constitutions have not added to the original formula, and the Nebraska Constitution has merely required that appropriations be "specific." But, as suggested, it is not easy to say just how much we have added to the formula. State ex rel. Fornoff v. Sargent; Dorman v. Sargent, and State ex rel. Delgado v. Sargent, supra, have not leaned toward strict construction. Moreover, we are not here required to go so far as some of these decisions have gone, in approving blanket appropriations for the building of roads, for the expenses of a game and fish department, or of a national guard.

The Attorney General, appearing as amicus curiæ, and supporting the plaintiff's position, directs attention to Edwards v. Childers, supra, and to State v. Searle, 79 Neb. 111, 112 N. W. 380, 381.

Edwards v. Childers is interesting, especially since the corresponding provision of the Oklahoma Constitution (article 5, § 55) contains the exact language here under consideration. Indeed, the Oklahoma provision is more restrictive than ours. It applies to all funds of the state or under its management as well as to payments from the treasury. It requires payments to be made within two and one-half years after the appropriation, and prohibits the fixing of the sum appropriated by reference to any other law.

The Oklahoma Supreme Court held that the dedication of a definite portion of the proceeds of its gasoline excise tax to the repair and maintenance of existing highways and to the construction of new highways to be designated by the highway department was a distinct specification both of the sum of the appropriation and of the object to which it was to be applied. It distinguished Menefee v. Askew, 25 Okl. 623, 107 P. 159, 27 L. R. A. (N. S.) 537, here cited by defendant.

We were not at first greatly impressed with the stated distinction that in Menefee v. Askew the dedication was of only part of a fund, the greater part of which would find its way as surplus into the state's general fund, while in Edwards v. Childers the whole fund was dedicated and was to be expended. But it is the consequences of the difference, not the difference itself, which present the legal distinction. In the one case, the game and fish department could draw ad libitum for undefined expenses. In the other, the whole fund was dedicated to what the court deemed the distinctly specified object of maintaining, repairing, and constructing roads. It is the distinction which we draw between the case at bar and McAdoo Petroleum Corporation v. Pankey, supra, a distinction which considers the practical consequences of the legislation, and seeks to effectuate the constitutional purpose.

The Oklahoma Criminal Court of Appeals seems not entirely satisfied with the distinction, remarking that "courts should not indulge in subtle distinctions to avoid constitutional limitations." Ex parte Pope, 33 Okl. Cr. 5, 242 P. 290, 295. Defendant cites this case. But, as we understand the distinction, it is not subtle, and it goes to the very evil the Constitution makers had in mind.

We have here discussed "sum" and "object" as separate matters to be distinctly specified. It seems to us, however, that they are interrelated. A distinct specification of object itself limits the fund and serves to prevent executive encroachments. When, as here, there is also a dedicated fund which cannot be exceeded, the constitutional principle is not invaded.

We conclude that the Legislature has not by this act surrendered the purse strings, and that we are not justified in defeating its policy by a literal or strict construction of the constitutional limitation. Before reaching that conclusion, we have considered all authorities cited by respondent, and many others. To mention them would unduly extend the opinion. They present a variety of situations and of views. Our own we have attempted here to set forth, guided by the language of the Constitution makers, former decisions of this court, and what we deem the correct rule of construction.

It may not be amiss to point out that the present result is not reached upon any consideration of whether the moneys involved are really the property of the state, whether they

are really in the treasury, or whether by creating suspense funds in the treasury the Legislature may in any measure defeat the constitutional purpose; questions which counsel have argued. We here assume the money to be the state's and in its treasury. We hold that it has been appropriated with distinct specification of sum and object in the constitutional sense.

■ Defendant suggests, though not strongly urging, that this is a suit against the state, citing State ex rel. Evans v. Field, 27 N. M. 384, 201 P. 1059. By stipulation he has admitted that plaintiff has done everything the law requires to entitle him to the warrant, and that the single ground of refusing it is doubt of the sufficiency of that law. We consider, therefore, that this case involves the refusal of an official to perform a clear statutory duty. In such a case the suit by the person for whose benefit the duty is enjoined is not a suit against the state. Such is the doctrine of the decision cited.

Citing State ex rel. Owen v. Van Stone, 17 N. M. 41, 121 P. 611, and Ex parte Nabors, 33 N. M. 324, 267 P. 58, defendant suggests, too, that this is not a proper case for the exercise of our original jurisdiction in mandamus against a state officer. We do not recall that this point was made at the oral argument.

We were impelled to issue the alternative writ by these considerations: The case is of public importance and interest. The single legal question involved had come to us twice on appeal and for different reasons had been

left undecided. Many individual claimants, and the public service as well, were prejudiced by the delay. It was represented, as has transpired, that there would be no disputed facts requiring a reference or a hearing of testimony. We shall not pause to consider whether the reasons were originally sufficient, within our declared policy. It would be an abuse now to quash the writ and relegate the parties to an action in the district court.

The alternative writ will be made permanent. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.

PARKER, J., did not participate.