367 P.2d 918

STATE of New Mexico ex rel. Carroll J. LEE, Executive Director of the Oil and Gas Accounting Commission, Relator,

v.

Edward M. HARTMAN, Director of the Department of Finance and Administration, Respondent.

No. 7034.

Supreme Court of New Mexico.

Dec. 19, 1961.

Earl E. Hartley, Atty. Gen., Boston E. Witt and Oliver E. Payne, Asst. Attys. Gen., for relator.

Modrall, Seymour, Sperling, Roehl & Harris, Daniel A. Sisk, Albuquerque, for respondent.

MOISE, Justice.

This is an original proceeding in mandamus wherein Relator seeks a determination of whether Respondent as director of the department of finance and administration, hereinafter referred to as department of finance is legally empowered to reduce the budget of the Oil and Gas Accounting Commission, hereinafter referred to as Commission, so as to provide for the expenditure of a lesser amount than was appropriated to the Commission for fiscal year 1961–62 in the General Appropriation Act passed by the 1961 legislature and duly approved by the Governor (Chap. 254, N.M.S.L.1961).

It is not necessary to relate the facts alleged in any great detail. It should be sufficient for our purposes to state that for the fiscal year 1961–1962, being the fiftieth fiscal year, the legislature appropriated for the Commission the total sum of $200,000 to be used for the following: (1) salaries, $111,000; (2) other operating expenses, $85,000; (3) capital outlay, $4,000.

Thereafter, before June 1, 1961, the Commission submitted a budget for the fiscal year 1961–1962 to the state budget division of the department of finance on forms prescribed therefor, providing for expenditure during the fiscal year of the total amount of $200,000, as appropriated.

The proposed budget was amended and reduced so as to provide for a total expenditure of $192,124, or some $7,876 less than the amount appropriated. It is to test this order that this proceeding was brought.

Relator argues that Respondent's actions were illegal and unconstitutional under five headings, viz., (1) that neither in the constitution nor in any statute has the Respondent been granted the power to reduce a law-

fully made appropriation; (2) that if such power is granted either in Chap. 253, N.M. S.L.1957 (§§ 11–4–1.1 to 11–4–1.8, N.M.S.A. 1953, pocket supp.), or in Chap. 254, N.M. S.L.1961 (§ 11–4–4, N.M.S.A.1953, pocket supp.), such grant was unconstitutional as an attempt to delegate a non-delegable legislative power; (3) that powers attempted to be conferred on the Respondent in the 1961 general appropriation act (§§ 2, 7, 8, 9 and 11, Chap. 254, N.M.S.L.1961; § 11–4–4, N.M.S.A.1953, pocket supp.), to reduce or increase appropriations through budgetary controls are unconstitutional because in violation of Art. IV, Sec. 16, New Mexico Constitution; (4) if statutory power to reduce appropriations is found to have been given Respondent in the statutes referred to, the same is unconstitutional since no proper standards are provided for the exercise of the power which is a legislative power, and (5) the Respondent acted illegally in suspending pay increases.

In the view we take of the problems presented it will be necessary for us to discuss only point (1) set out above. In order to properly understand the issue it is important that some of the history and background of our state fiscal control policy be reviewed briefly. To do this we start with the year 1915 when the legislature by § 4, Chap. 57, N.M.S.L.1915, created the state board of finance and in general terms provided it should have supervision "of the safe keeping" of all public monies, and of "all the fiscal affairs of the state."

By successive amendments, changes in the makeup of the state board of finance were effected, and various new powers and duties assigned to it. However, it at all times continued to "have general supervision of the fiscal affairs of the state, and of the safekeeping and depositing of all moneys and securities belonging to or in the custody of the state" (§ 11–1–1, N.M. S.A.1953, and § 11–1–1, N.M.S.A.1953, pocket supp.), being substantially the same language contained in the original legislation by which it was created.

By Chap. 48, N.M.S.L.1923, the office of state comptroller was created, replacing the offices of state travelling auditor and state educational auditor, and was given power of "general superintendence of the fiscal affairs of the state, under the supervision and direction of the state board of finance." (§ 11–1–19, N.M.S.A.1953) and as a special power and duty was authorized to transfer funds "from one [1] budget item to another" (§ 11–1–20, N.M.S.A.1953) under certain specified circumstances.

By Chap. 23, N.M.S.L.1935 (§ 11–1–4, N.M.S.A.1953), the state comptroller was made executive officer of the state board of finance "subject in all things to the direction and control of said board," and his powers were at the same time transferred to the state board of finance, but were to

continue to be performed by the comptroller "in the name and under the direction and control of said board."

In the same year (1935) the general appropriation act for the first time granted to the state board of finance the power to "reduce all appropriations made herein by not to exceed ten per cent (10%) * * *" with certain specified exceptions (§ 13, Chap. 151, N.M.S.L.1935). Each general appropriation bill made thereafter, up to and including 1955, contained a similar provision. The percentage of reduction authorized varied during the year (from 10% to 25%) and certain language changes are present in certain years, but substantially the same power to reduce appropriations not to exceed a definite percentage is contained in each bill.

In 1957, when the department of finance and administration was created it was given the authority to make reductions not to exceed 15% in "all annual operating budgets made herein * * * with the approval of the state board of finance." (§ 15, Chap. 235, N.M.S.L.1957).

However, in 1959 (§ 24, Chap. 288, N.M. S.L.1959), and again in 1961 (§ 24, Chap. 254, N.M.S.L.1961) the authority is once more given to the state board of finance to "reduce all annual operating budgets authorized herein" not to exceed a given percentage (15% in 1959 and 10% in 1961).

It was also in 1935 that the state board of finance was given "supervision and control of the budgets of all state offices, departments, bureaus and institutions," and the requirements made that budgets should be submitted to the state ·board of finance before June 1 of each year. This act provided that the budget "shall be subject to the approval of the State Board of Finance" and that no expenditures could be made until the budget had been "approved" by it, and with further provision that the Governor could review and modify the action of the state board of finance. (§ 1, Chap. 27, N.M.S.L.1935).

Several changes in procedures intervened between 1935 and 1957, but none of these was of a material or substantial character. It was in 1957 that the legislature undertook a major overhaul of the budget procedures and fiscal practices of the state. These changes were accomplished in general by the adoption of five pieces of legislation, viz., Chap. 249, N.M.S.L.1957, abolishing the office of educational budget auditor, and defining the powers and duties of the public school finance division of the department of finance; Chap. 250, N.M.S.L.1957, relating to financial affairs of local public bodies and defining the powers and duties of the local government division of the department of finance; Chap. 251, N.M.S.L. 1957, abolishing the office of state comptroller and establishing the department of finance, creating within it the budget divi-

sion, the financial control division, the public school finance division, and the local government division; Chap. 252, N.M.S.L.1957, defining the powers and duties of the finance control division; Chap. 253, N.M. S.L.1957, abolishing the office of state budget director and transferring his duties to the budget division of the department of finance, abolishing certain duties of the state board of finance (§ 11-4-1, N.M.S.A.1953) over budgets and specifying the powers and duties of the department. Inasmuch as Respondent relies to a large extent on the provisions of this act, we quote §§ 6 and 8 (§§ 11-4-1.6 and 11-4-1.8, N.M.S.A.1953, pocket supp.) therefrom:

§ 11-4-1.6 "The state budget division is hereby authorized to engage in research and to make administrative and organizational surveys of the executive or administrative departments, boards, institutions, commissions or agencies of the state government to determine whether the activities thereof are essential to good government and are being carried on in an economical and efficient manner and without duplication, for the purpose of determining the feasibility of improving the administration of the state government. Reports concerning the results of such research and surveys, together with recommendations, shall be made to the governor and the legislature."

§ 11-4-1.8 "Each state agency shall annually on or before June 1 submit to the state budget division a budget for the ensuing fiscal year, in such form as may be prescribed by the division and containing such information concerning the anticipated receipts, expenditures and balances on hand as may be prescribed by law or by the state budget division. Such budget shall be subject to the approval of the state budget division and no expenditures shall be made by any state agency for the fiscal year covered by said budget until the budget shall have been approved by the state budget division, Provided that any action by the division shall be subject to review and modification by the governor."

Mention should be made of the fact that in 1951 the legislature created a State Reorganization Committee (Chap. 140, N.M. S.L.1951) to make certain investigations and studies and instructed it to report its findings and recommendations for reorganization of the agencies of state government "in order to promote greater efficiency and greater economy of effort and money in the exercise of state government."

The committee was formed and made its report in 1952 ("Report—New Mexico Reorganization Committee—1952"). Respondent points to the recommendations therein for the creation of a budget system to be "administered by a Budget Bureau estab-

lished within a Department of Finance and Administration," and that it "be given power to adjust the operating budgets of state agencies and that neither the State Board of Finance nor the Governor shall act upon these," and sees in the action of the 1957 legislature in passing the five acts already referred to, a substantial carrying out of these recommendations.

From the foregoing we take no issue with Respondent's statement that the history recounted discloses "thoughful, intentional delegation by the legislature to the Executive Branch of government of certain administrative duties, the performance of which on a current basis is required for the public good." Respondent proceeds from this averment to the assertion that "these powers" have been exercised for more than twenty-five years to the satisfaction of both the legislative and executive branches of the government. If it is intended by "these powers" to refer to the percentage cuts in appropriation or budgets to be made by the state board of finance as provided for in general appropriation bills continuously since 1935, we would be inclined to agree. However, it does not follow from this fact that the legislature has evidenced any intention to grant to the Respondent any of the powers here questioned by Relator.

■■■ We are in complete accord with the fundamental principle that courts will not declare an act of the legislature unconstitutional if there is any reasonable basis upon which the act can be upheld as constitutional. Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122; State ex rel. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205. Be this as it may, as we view the case, this rule has no application. We first address ourselves to an examination of the statutes in an effort to determine if the legislature has delegated the questioned authority to the Respondent. Absent a finding of such delegation no constitutional question is posed, and as we will hereinafter point out, such delegation is absent.

Relator argues that nowhere in the constitution nor in the statutes can there be found any authority in Respondent to reduce a lawful appropriation.

We have already quoted §§ 6 and 8 of Chap. 253, N.M.S.L.1957 (§§ 11–4–1.6 and 11–4–1.8, N.M.S.A.1953, pocket supp.). In addition, our attention is called to the following provisions contained in Chap. 254, N.M.S.L.1961 (§ 11–4–4, N.M.S.A.1953, pocket supp.) :

"Section 2.—For the fiftieth and fifty-first fiscal years, appropriations are made from the state general fund, except as otherwise provided, for the following executive agencies and departments. Expenditures may be made for the purposes indicated and in accordance with annual budgets approved by the department of finance and administration. Balances remaining to the credit of accounts set out in this section

at the end of each fiscal year shall revert to the general fund except as otherwise indicated."

"Section 7. * * * No department or agency in this section shall exceed the amounts designated for administrative costs either by encumbrances or by cash expenditures and detailed budgets shall be submitted annually for the approval of the department of finance and administration. The department of finance and administration may readjust the budget items when necessary for more efficient or effective administration and may allow emergency budgetary increases within available revenues designated by law for administrative purposes, the emergency to be established by the department of finance and administration, but the total amount appropriated shall not be increased. * * *"

"Section 8. For each of the fiftieth and fifty-first fiscal years, appropriations are made for each of the following boards from revenues provided therefor by law. Expenditures from these appropriations shall be made in accordance with annual budgets approved by the department of finance and administration. * * * Total budgets of the boards in this section may not be increased except upon order of the department of finance and administration in cases of emergency brought to

the attention of the department of finance and administration."

"Section 9. * * * The funds appropriated shall be transferred to the accounts of the departments and agencies indicated and expended in accordance with annual budgets approved by the department of finance and administration. * * *"

"Section 11. Transfers of amounts itemized in this act for particular expenditures within the total appropriation of any agency, office, department, or institution may be made only after specific approval of such transfer by the department of finance and administration."

Nowhere in Chap. 253, N.M.S.L.1957, nor in the quoted sections of Chap. 254, N.M.S.L.1961, and our attention is directed to no other legislative provisions on the subject, can there be found any express authority granted to the Respondent to reduce approved appropriations.

§ 6 of Chap. 253, N.M.S.L.1957 (§ 11–4–1.6, N.M.S.A.1953, pocket supp.) authorizes the budget division to engage in research and to make surveys "to determine whether the activities thereof are essential to good government and are being carried on in an economical and efficient manner and without duplication, for the purpose of determining the feasibility of improving the administration of the state government" and

provides that reports on the results of the research and surveys conducted by it "together with recommendations, shall be made to the governor and the legislature." Although Respondent sees in this section authority to reduce budgets, try as we will we find no such direction or provision either expressed or implied.

What is the situation concerning § 8, Chap. 253, N.M.S.L.1957 (§ 11-4-1.8, N.M. S.A.1953, pocket supp)? An examination of its language discloses that it provides that on or before June 1 each agency must submit its budget for the ensuing fiscal year on forms prescribed by the budget division, which budget "shall be subject to the approval" of the budget division, and that until the budget is approved no expenditures shall be made; also, that the action of the budget division is "subject to review and modification by the governor." Certainly, there is no express grant of power in the section unless it is implicit in the right to approve, and the fact that absent approval expenditures are prohibited.

■ Respondent argues that this section clearly gives the Respondent authority to prevent any agency from expending the full amount of money appropriated to it inasmuch as the budget division may approve a budget in a sum less than the total appropriated. No authority for the statement is cited, and after making the assertion Respondent proceeds to argue that the granting of the power would not authorize

any change in appropriations but only in the right to expend the amounts appropriated. We do not wish to be understood as saying that the entire amount appropriated must always be expended. The appropriation is only a statement of the maximum amount which may be spent. Gamble v. Velarde, 36 N.M. 262, 13 P.2d 559.

■ In State ex rel. Lucero v. Marron, 17 N.M. 304, 128 P. 485, 492, we stated, "where there is an existing law, under which an institution has been established by the State, and which was within the power of the Legislature to establish, the legislative department of the government must be the sole and exclusive judge of what is required for such institution in the way of expenses under existing laws." We do not understand this language to prohibit delegation by the legislature of the authority to make reductions in amounts to be expended but we are clear that when any such delegation is made it must be expressly done, and the standards, whereby the agency or agent to whom it is delegated will be governed, must be clearly stated. McAdoo Petroleum Corporation v. Pankey, 35 N.M. 246, 294 P. 322; State ex rel. Zimmerman v. Dammann, 229 Wis. 570, 283 N.W. 52.

Our difficulty arises in our inability to find in the right given the department to approve budgets, an implied power to reduce them so as to provide for expenditure of less than amounts appropriated.

This court at an early date had occasion to consider the meaning of the words "subject to the approval" as used in legislation. This was in the case of Makemson v. Dillon, 24 N.M. 302, 171 P. 673, 674 where we considered what power was given to the Secretary of Interior under the provisions of the Enabling Act to the effect that selection of lands granted to New Mexico should be effectuated under the direction and "subject to the approval" of the Secretary of Interior. We there said:

"* * * The words 'subject to the approval' we do not regard as giving the Secretary of the Interior discretion to arbitrarily refuse a selection for no reason at all. These words are to be understood to mean that the Secretary of the Interior shall investigate and pass upon and render judgment as to whether the lands selected are within the terms of the grant, and, if so, it is his duty to list them to the state."

We see no difference in the approval here provided for. The Respondent cannot refuse approval without some basis, and if the budget as submitted is within the amounts appropriated and the items are proper, he is given no discretion except to approve them. Compare State ex rel. Monroe & Son v. Baker, 112 Ohio St. 356, 147 N.E. 501.

Respondent also argues that the legislature has itself for many years interpreted the power as included in the grant of authority to the executive, in its long acceptance of the exercise of these powers, and that such acquiescence by the legislature amounts to a legislative interpretation, and ordinarily will be accepted as correct by the courts. Norton v. Lusk, 248 Ala. 110, 26 So.2d 849, is cited in support of the rule. Although we will concede that the rule may be proper under certain circumstances it has no pertinency here in a situation which is clear and not open to doubt. The rule is to be resorted to only where meaning is doubtful, State ex rel. Capitol Addition Bldg. Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878, and when direct methods of interpretation have failed. State ex rel. Swope v. Mechem, 58 N.M. 1, 265 P.2d 336.

Looking next to the various provisions of the 1961 general appropriation act (Chap. 254, N.M.S.L.1961, § 11-4-4, N.M.S.A.1953, pocket supp.) quoted supra, we would call attention to the entire absence of a single word authorizing reductions in budgets. § 2 requires approval by the department of finance. This was merely a reiteration of the requirements of law (§ 11-4-1.8, N.M. S.A.1953, pocket supp.), and as pointed out above the right to approve does not include the right to reduce where the budget is within the appropriation.

§ 7 provides for readjustment of "budget items when necessary for more efficient or effective administration" and for the granting of "emergency budgetary increases

within available revenues." The right to make readjustments must be read in connection with the general authority in § 11 to transfer amounts itemized "for particular expenditures within the total appropriation" only after approval of the department of finance, and § 8 which prohibits increases in the total budgets except in the case of emergencies and on order of the department of finance. We consider it significant that whereas increases are referred to, there is absolutely no mention made of reductions—only to "readjustments" and "transfers" and "approval." The omission of any express authority to reduce total budgets below amounts appropriated is strongly persuasive of a legislative intent that it should not be included, and we so hold.

The Supreme Court of Florida arrived at the same conclusion in State ex rel. W. R. Clark Printing & Binding Co. v. Lee, 117 Fla. 779, 158 So. 461, 465, when called upon to interpret the meaning of a constitutional provision setting forth the powers of the comptroller. We quote the following from that case:

"Section 23 of article 4 of the State Constitution, vesting the comptroller with power to examine, audit, adjust, and settle accounts of state officers, confers upon the comptroller the right and imposes upon him the duty to see to it that all disbursements of public moneys are authorized by a legal appropriation, and that the payment of a particular item violates no positive prohibition against payment, expressly or impliedly forbidden by law. That section and article vests the comptroller with no supervisory authority to veto or disallow items of expenditure for which a lawful appropriation has been made by the Legislature and the payment of which, as approved by the responsible officer or agency incurring the obligation under statutory power so to do, violates no provision of law." See also State ex rel. Henry G. Du Pree Co. v. Gay (Fla.1950), 46 So.2d 711.

Respondent's argument that the various acts adopted by the legislature of 1957 putting into effect recommendations contained in the 1952 Report of the New Mexico State Reorganization Committee indicates an intention on the part of the legislature that the budget division should have power to reduce budgets so as to deny expenditure of full amounts appropriated, is not borne out by the record. The recommendation was that the budget division have power to "adjust" operating budgets. Adjust is defined as "to bring to a more satisfactory state; to bring to a true or effective relative position; to rearrange the relationship of components," and readjust means "to adjust again." Transfer means "to carry or take from one person or place to another; to move or send to a different location; to cause to pass from one person

or thing to another; to cause to transform; change." Webster's Third New International Dictionary. As already stated, there is no connotation of "reduce" in any of these terms.

Also, it was the recommendation that neither the state board of finance nor the governor should have anything to do with budget revisions. By express provisions of § 8, Chap. 253, N.M.S.L.1957 (§ 11–4–1.8, N.M.S.A.1953, Pocket supp.) the governor was given power to review and modify. Although other examples of variances between the recommendations of the State Reorganization Committee and the legislation could be cited, this should be sufficient to demonstrate the fallacy in the argument that because the reorganization committee made a recommendation, the legislature intended to follow it.

We are convinced that we have correctly appraised the legislative intent and, after all, this is our purpose and aim in construing legislation. Montoya v. McManus, 68 N.M. 381, 362 P.2d 771.

We take note of the case of Board of Education of Wyoming County v. Board of Public Works (W.Va.1959), 109 S.E.2d 552, 558, cited by Respondent and relied on in connection with the constitutionality argument, and would point out that the legislation there being considered provided that the Board of Public Works upon determining "that the amounts, or parts thereof,

appropriated from the general revenue cannot be expended without creating an overdraft or deficit in the general fund, it may instruct the director to reduce equally and pro rata all appropriations out of general revenue in such a degree as may be necessary to prevent an overdraft or a deficit in the general fund." The differences between the authority there being considered and that here involved should be too obvious to require amplification. Suffice it to say, the power to instruct to reduce appropriations, or as determined by the court, to limit expenditures, is specifically stated in the act. To like effect is Yelle v. Bishop, 55 Wash.2d 286, 347 P.2d 1081, also relied on by Respondent.

We do no reach, and accordingly express no opinion on the other constitutional questions raised in the briefs. We would point out that some of them are pertinent and are discussed in the companion case of Holmes v. State Board of Finance, No. 7033, 69 N. M. ——, 367 P.2d 925, where the issue presented has to do with the constitutionality of the express grant of authority to the state board of finance to reduce annual operating budgets not to exceed 10% as provided in § 24, Chap. 254, N.M.S.L.1961. For present purposes we consider it sufficient to direct attention to the express use of the word "reduce" in the section in question and what we consider the inescapable implications of its omission from the other sections discussed above. Our conviction that we have

correctly decided the issues here presented is bolstered by this fact.

It follows from what has been said that we find no authority for the Respondent to reduce lawful appropriations made to the Commission, and accordingly a peremptory Writ of Mandamus as prayed in the petition filed herein should issue. It is so ordered.

CARMODY, CHAVEZ and NOBLE, JJ., concur.

COMPTON, C. J., not participating.