460 P.2d 250

STATE of New Mexico ex rel. CONSTITU-
TIONAL CONVENTION, Bruce King,
President, Petitioner,

v.

Ernestine D. EVANS, Secretary of State,
Respondent.

No. 8915.

Supreme Court of New Mexico.

Oct. 20, 1969.

W. W. Atkinson, Albuquerque, for petitioner.

James A. Maloney, Atty. Gen., J. F. Bingaman, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

MOISE, Justice.

The electors of the state having voted approval of a call for a convention to revise or amend the constitution, the legislature, at its next session, provided by law for calling the same. This was all done in accord with the provisions of art. XIX, § 2, of our present constitution, and appears as ch. 134, N.M.S.L.1969. The petitioner here, being the body convened by virtue of that law, asserts its right to direct respondent in connection with the disbursement of the funds appropriated to her in § 28(C) of said ch. 134, supra, which reads as follows:

"There is appropriated from the general fund: .

"* * *

"C. to the secretary of state for use in the fifty-eighth fiscal year the sum of one hundred fifty thousand dollars ($150,000) for the purpose of publishing notice and the content of any revision or amendment proposed by the constitutional convention and for conducting the special election called by the governor for the approval or rejection by the people of such revision or amendment; * * *."

It is petitioner's position that its Resolutions No. 3 and No. 4, attached hereto as Appendix A and Appendix B, respectively, are controlling on respondent because the substance thereof is not covered by the provisions of ch. 134, § 28(C), supra, and that pursuant to inherent power resting in petitioner, it had the power to adopt the same. They further claim that if any conflicts exist between their resolutions and the said section of the statute, their determination is superior and controlling.

Respondent has sought advice from the Attorney General and, based on his opinion, has informed petitioner that she does not propose to comply with the resolutions mentioned above, but to follow the advice contained in the Attorney General's opinion. This is attached as Appendix C.

On the application of petitioner, we issued our alternative writ of mandamus directing the respondent to follow the resolutions and not the opinion noted above. Return has been filed admitting the material facts, the issues have been briefed and argued, and the case is ripe for decision. Because of the importance of the problem and the exigencies of time, we have given the matter precedence over other pending matters, and announce our decision with the least possible delay consistent with deliberate consideration of the questions involved.

The first problem requiring an answer is whether art. XIX, § 1, New Mexico Constitution, applies in circumstances such as are here present. The Attorney General has advised that in his opinion it does. We disagree. That section, so far as material, reads:

"Any amendment or amendments to *this* Constitution may be proposed in either house of the legislature at any regular session thereof; and if a majority of all members elected to each of the two houses voting separately shall vote in favor thereof, such proposed amendment or amendments shall be entered on their respective journals with the yeas and nays thereon.

"The secretary of state shall cause any *such* amendment or amendments to be published in at least one newspaper in every county of the state, where a newspaper is published once each week, for four consecutive weeks, in English and Spanish when newspapers in both of said languages are published in such counties, the last publication to be not more than two weeks prior to the election at which time said amendment or amendments shall be submitted to the electors of the state for their approval or rejection; and the said amendment or amendments shall be voted upon at the next regular election held in said state after the adjournment of the legislature proposing such amendment or amendments, or at such special election to be held not less than six months after the adjournment of said legislature, at such time as said legislature may by law provide. If the same be ratified by a majority of the electors voting thereon such amendment or amendments shall become part of *this* Constitution. * * *" (Emphasis added.)

Our conclusion is based on the following reasons: (1) The italicized word "such" refers back to "any amendment or amendments to this Constitution" proposed and passed by the legislature. To our minds, this clearly applies where one or more amendments to the present constitution are being considered, but does not apply where an entirely new constitution is being weighed. (2) Possibly more convincing than the first reason is the presence of section 2 in art. XIX of the Constitution, setting forth the procedure for calling a constitutional convention to revise or amend the Constitution. The section reads:

"Whenever, during the first twenty-five years after the adoption of this Constitution, the legislature, by a three-fourths vote of the members elected to each house, or, after the expiration of said period of twenty-five years, by a two-thirds vote of the members elected to each house, shall deem it necessary to call a convention to revise or amend this Constitution, they shall submit the question of calling such convention to the electors at the next general election, and if a majority of all the electors voting on such question at said election in the state shall vote in favor of calling a convention the legislature shall, at the next session, provide by law for calling the same. Such convention shall consist of at least as many delegates as there are members of the house of representatives. The Constitution adopted by such convention shall have no validity until it has been submitted to and ratified by the people."

The petitioner came into being through compliance with section 2 and not section 1 of art. XIX (see ch. 134, § 1, N.M.S.L. 1969) and the provisions of section 1 can in no way be made applicable by implication or otherwise.

■ It is true, as argued by petitioner, if there is reason to provide for certain publicity to proposed amendments when submitted separately or in pairs, the considerations for such publicity would be even more compelling when a completely new document is being submitted to a vote. The answer is to be found in the fact that the two sections are of equal dignity, McCormick v. Board of Education, 58 N.M. 648, 274 P.2d 299 (1954). Section 1 is not to be read as if section 2 did not exist. Neither is there reason to read into section 2 the limitation of section 1, not included within the language of section 2. La Follette v. Albuquerque Gas & Electric Co.'s Rates, 37 N.M. 57, 17 P.2d 944 (1932); Rathjen v. Reorganized School District R–11, 365 Mo. 518, 284 S.W.2d 516 (1955); Prescott v. Duncan, 126 Tenn. 106, 148 S.W. 229 (1912). An interpretation which gives complete effect to both sections is required. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511 (1933); State ex rel. Charlton v. French, 44 N.M. 169, 99 P.2d 715 (1940); Staples v. Gilmer, 183 Va. 613, 33 S.E.2d 49, 158 A.L.R. 495 (1945); 16 C.J.S. Constitutional Law § 23.

In view of the presence of section 1 of art. XIX which clearly applies to amendments proposed in the legislature, and section 2 which applies to revisions or amendments made by a convention called for that purpose, we do not consider as applicable cases such as State ex rel. Forchheimer v. Le Blond, 108 Ohio St. 41, 140 N.E. 491 (1923), and State ex rel. Miller v. Taylor, 22 N.D. 362, 133 N.W. 1046 (1911), cited by respondent, and holding generally that the word "amendment" should be given a broad meaning so as to include any and all revisions or changes. As a matter of fact, in the latter of these cases we find support for the position we here adopt, because that case turned largely on the fact that a provision comparable to our art. XIX, § 2, had been defeated in the constitutional convention and the constitution, as adopted, had only a provision similar to art. XIX, § 1. It is implied that if the situation had been otherwise and both sections had been included, a different result would have followed.

Having concluded that the respondent is not controlled by art. XIX, § 1, standing alone, and since art. XIX, § 2, does not detail the method and procedures for publicizing the contents of the document adopted by petitioner and to be submitted to the electorate for their approval or disapproval, does it follow that petitioner has the power and authority to direct and control the expenditures as was undertaken through adoption of Resolutions 3 and 4? Petitioner argues in this proceeding that its actions were lawful and proper, and that respondent should be directed to conform therewith.

In presenting its position, petitioner places principal reliance on the case of Carton v. Secretary of State, 151 Mich. 337, 115 N.W. 429 (1908), wherein it appears that the right of a constitutional convention to change the date for submission of the constitution prepared by it to a vote of the people was held to be properly within the powers of the convention. The legislature had provided for the calling of the convention, and in the legislation had required submission of the constitution to a vote at the April election of 1908. It was contemplated that the convention would have completed its work by January 31, 1908, because of a provision that compensation of the delegates should cease on that date; but actually work was not completed until February 21, and the convention then directed that the submission to a vote be at the November, 1908 election. While a majority of the court agreed that the submission at the November, 1908 election was proper, there was no agreement as to the reasons for the result. Some of the judges felt the power to fix the date was inherent in the convention, while others reached their conclusion by interpreting a provision of the constitution then in effect to require the submission to be at the November, 1908 general election. It would appear that a majority would have denied the power to the convention absent the constitutional requirement for the submission to be held at the general election in November, 1908.

Without in any way questioning the Carton case, supra, we are confronted with an entirely different problem, and in consequence thereof, a different result must follow. Whereas, in the Michigan case the fixing of a date for the election was required by the constitution with no provision made therein as to who had the power or responsibility to do it, and the case turned on who had the power or duty to fix the date, we are here dealing with an appropriation made by the legislature, and the right of petitioner in connection therewith. Under our Constitution (art. IV, § 30) it is provided " * * * money shall be paid out of the treasury only upon appropriations made by the legislature. * * * Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied."

The legislature, in ch. 134, § 28(C), N. M.S.L.1969, made its appropriation in compliance with art. IV, § 30, N.M.Constitution. Petitioner recognizes this as being properly within the powers and duties of the legislature, but argues that the call for the convention approved by a vote of the

people did not provide for the method or procedures to be followed in submitting the new constitution. It cites cases holding that procedures of this type can be provided by the people if included in the call approved by them. However, our attention is not directed to any authority holding the converse, namely, that if no limitations, restrictions, or directions are contained in the call, the power to do what is here attempted resides in the convention. Likewise, we have found no such authority.

The legislature acts under the authority and in accord with the provisions of art. IV of our Constitution. Article IV, § 30, prohibits expenditure of money unless appropriated by the legislature, and an appropriation act is required to fix the amount and object of expenditure. In State ex rel. Lee v. Hartman, 69 N.M. 419, 426, 367 P.2d 918, 923 (1961), we cited Gamble v. Velarde, 36 N.M. 262, 13 P.2d 559 (1932), to the effect that an "appropriation is only a statement of the maximum amount which may be spent." In our view, the legislature has acted in compliance with the constitutional mandate and, having done so, no further direction or limitation is permissible, or, if permissible, the appropriation would fail as being defective or insufficient to meet constitutional requirements. See McAdoo Petroleum Corp. v. Pankey, 35 N.M. 246, 294 P. 322 (1930). We note the discussion in Gamble v. Velarde, supra, as to whether the limitations on the power to appropriate are addressed to the executive or the legislature. However, do the provisions permit the intercession by any other person or body, executive or otherwise, in determining how the object for which the money is appropriated for a specified object should be spent? We are firmly of the opinion the answer must be in the negative.

Either a constitutional appropriation has been made by the legislature through the designation of the amount and object of an expenditure under definite fixed conditions and circumstances by the proper official— here, the respondent—or the appropriation fails. McAdoo Petroleum Corp. v. Pankey,

supra. There is no room for directions to the respondent from the relator, as attempted by the resolution here in question.

We would only add that the purpose for calling the convention is specified in art. XIX, § 2, N.M.Const., supra, and the call approved by the voters conforms therewith. It is to "revise or amend" the existing constitution—not to legislate; neither is the convention given powers beyond those incident to its own conduct and the performance of its duties and function. Notwithstanding, art. XIX, § 2, supra, states that "The Constitution adopted by such convention shall have no validity until it has been submitted to and ratified by the people"; nothing is said to the effect that the submission shall be by the convention. However, that is not our problem. The legislature has made the necessary provision, has appropriated the money and provided for its expenditure. We see no area in which petitioner could properly exercise powers outside those mentioned, as attempted by adoption of Resolutions 3 and 4. They are held to be void and ineffective.

Even though by its terms art. XIX, § 1, is not applicable, is it made controlling by the provisions of §§ 3–16–1 to 3–16–12, N.M.S.A.1953, being that portion of the election code applicable to voting on constitutional amendments and questions? This query we answer in the affirmative.

Section 3–16–1, N.M.S.A.1953, reads:

"At all elections at which any proposed constitutional amendment or question is submitted to a vote of the electors, the election shall be held and conducted in accordance with Election Code."

Section 3–16–4, N.M.S.A.1953, provides for publication in the following language:

"Upon receipt of the certified proposed constitutional amendment or other question, the county clerk shall include it in the proclamation to be issued and shall publish the full text of each proposed constitutional amendment or other question in accordance with the Constitution of New Mexico."

We see no escape from the conclusion that when the legislature stated that other questions should have their full text published "in accordance with the Constitution of New Mexico" the reference is necessarily to the provision for publication in art. XIX, § 1, supra. There is no other provision in the Constitution setting forth the requirements for publication. The legislative purpose and intent is clear. The election code requires compliance with the publication provisions of art. XIX, § 1, New Mexico Constitution, when the *question* of the adoption of the new constitution is published.

The writ heretofore issued is discharged. It is so ordered.

COMPTON, TACKETT and WATSON, JJ., and SPIESS, C. J., Ct. App., concur.

## APPENDIX A

### STATE OF NEW MEXICO

### CONSTITUTIONAL CONVENTION OF 1969

### RESOLUTION NO. 3

### SEPTEMBER 3, 1969

SUBMITTED BY: SAM GARCIA

BE IT RESOLVED BY THIS CONVENTION:

(1) This Convention intends to adopt a new Constitution repealing the existing New Mexico Constitution and to submit the new Constitution to the voters for ratification.

(2) The new Constitution shall be published by the Secretary of State one time in one newspaper in every county of the State where a newspaper is published, in English and in Spanish when newspapers in both of said languages are published in such counties. Any appropriated funds not used for publishing legal notice of the new Constitution, or conducting the election shall be used by the Secretary of State for retaining professional assistance in publicizing in other ways the content of the new Constitution under the supervision of the Convention,

(3) The County Clerks shall not publish the full text of the proposed new constitution. In all other respects, unless otherwise directed by this Convention, the special election called for submission of this document to the people shall be conducted in accordance with law.

(4) The officers of the Convention are directed to instruct the Secretary of State to prepare the election procedures and contract for the expenditure of appropriated funds in accordance with this resolution.

## APPENDIX B

### STATE OF NEW MEXICO

### CONSTITUTIONAL CONVENTION OF 1969

### RESOLUTION NO. 4

### SUBMITTED BY:

[A213]

BE IT RESOLVED BY THIS CON-
VENTION THAT:

It is the sense of this convention that
the Secretary of State should prepare in-
formational materials in English and Span-
ish to assure that all the people of this
state are adequately informed about the
new constitution.

APPENDIX C

EXHIBIT B

September 11, 1969

Honorable Ernestine D. Evans
Secretary of State
Legislative-Executive Building
Santa Fe, New Mexico

Dear Ernie:

You have asked the following three ques-
tions:

1. What are the procedures required of
the Secretary of State in conducting the
election on proposals for revision or
amendment of the present constitution by
the Constitutional Convention with partic-
ular regard to the number of publications
required?

2. What is the legal position of the Sec-
retary of State should the requirements of
law and instructions from the Constitution-
al Convention be in conflict?

3. Assuming all legal requirements for
publication and conduct of the election have
been met, is the Secretary of State to use
any money left over to publicize the pro-
posals or the election?

In answer to your first question, our opin-
ion is that the Secretary of State is legally
bound to follow the New Mexico Constitu-
tion and the New Mexico Statutes in the
matter of the procedures for conducting
the ratification election. Article XIX, Sec-
tion 4 requires four publications of con-
stitutional amendments and we see no legit-
imate reason why the requirement does not
apply to the work of the Constitutional
Convention.

New Mexico Statutes deal with this ques-
tion extensively and in our opinion should
be followed by you as well.

Section 3–16–1, N.M.S.A., 1953 Compilation
states "At all elections at which any pro-
posed constitutional amendment or ques-
tion is submitted to a vote of the electors,
the election shall be held and conducted in
accordance with the Election Code." Para-
graph 3 of Resolution No. 3 passed Septem-
ber 3, 1969 by the Constitutional Conven-
tion is in direct violation of Section 3–16–1
and Section 3–16–4, N.M.S.A. Consequent-
ly we repeat that in all matters this office
advises you to follow Article XIX of the
New Mexico Constitution and the New
Mexico Election Code.

You, as Secretary of State, are required to
follow the New Mexico Constitution and
the New Mexico Statutes in the expendi-
ture of the funds appropriated to you for
"the purpose of publishing notice and the
content of any revision or amendment pro-
posed by the constitutional convention and
for conducting the special election called
by the governor for the approval or rejec-
tion by the people of such revision or
amendment." If you should refuse to fol-
low the Constitution and the laws in the
expenditure of these funds, a court order
might be secured to order you to do so.

If the legal requirements for publishing
notice and conducting the election are met
any left over money can be used for the
purpose of "publishing notice and the con-
tent of any revision or amendment pro-
posed by the constitutional convention."
We see no objection to your using this
money in any legitimate way to inform the
public of the content of the proposed revi-
sion and the holding of the ratification
election.

If we can be of further service please
notify us.

Sincerely,

James A. Maloney
Attorney General

JAM:ebo